**PARK AVENUE IMPORTS, Appellant,**
v.
**UNITED STATES, Appellee.**
**A.R.D. 255; Reappraisements R64/3814 and R64/12650.**

United States Customs Court
Second Division, Appellate Term.
May 6, 1969.

Sharretts, Paley, Carter & Blauvelt, New York City (Charles P. Deem, New York City, of counsel) for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold Grossman and Andrew P. Vance, New York City, trial attorneys), for appellee.

Before RAO, FORD, and NEWMAN, Judges.

NEWMAN, Judge:

This is an application by plaintiff below for review of a decision and judgment of a single judge in two consolidated appeals for reappraisement, wherein the appraised values were held to be the correct export values of certain wearing apparel. Park Avenue Imports v. United States, 60 Cust.Ct. 750, R.D. 11468, decided January 22, 1968.

Involved is the dutiable value of certain boys' cotton trousers exported from Hong Kong and Kobe (Japan) in June and July 1963, respectively. The merchandise was entered at the invoiced unit f. o. b. prices and was appraised at those prices plus $3\frac{1}{2}$ percent, net, packed, which appellee contends represents the correct export values. However, appellant contends that the entered invoiced f. o. b. prices represent the correct dutiable values, and that the $3\frac{1}{2}$ percent additions by the appraiser represented *bona fide* buying commissions, which are not properly a part of export value.

The parties agree that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of value of the merchandise.[1]

---

1. Section 402(b) of the Tariff Act of 1930, as thus amended, reads:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary courts of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in

At the trial, the parties agreed by written stipulation "that the 3½% added by the appraiser to the entered values in each case herein represents the amount of an alleged buying commission as shown on the Cohen Sons Trading Co. invoices accompanying each entry, and that the issue herein is limited to whether or not said amount represents a *bona fide* buying commission."

The trial court held that plaintiff had failed to prove that the 3½ percent additions were in fact *bona fide* buying commissions or that the transactions here involved were conducted in the ordinary course of trade in the principal markets in which the imported merchandise was purchased. With respect to the latter, the trial judge held: "This constitutes a fatal failure of proof in the plaintiff's case."

Appellant contends, as it did below, that the 3½ percent additions represented *bona fide* buying commissions, not properly part of the export value of the merchandise; and that the trial judge erred in holding that the importer had failed to sustain its burden of establishing that the instant transactions were made in the ordinary course of trade in the principal markets, since no affirmative evidence was necessary to sustain the importer's burden in that respect. Appellee's position is that appellant has failed to establish that the alleged buying commission is *bona fide*. Although conceding that the appraisements herein are separable, appellee nevertheless urges that we should examine the record "to determine whether the involved sales were in fact made in the ordinary course of trade and otherwise meet the statutory elements of export value." (Brief, page 12). We agree with appellant's contentions.

To substantiate its claim that the disputed item of 3½ percent of the invoiced f. o. b. prices represented *bona fide* buying commissions, appellant presented both testimonial and documentary evidence consisting of: three affidavits (exhibits 1, 2, and 3) by E. K. Stein, vice-president of Cohen Sons Trading Co., Ltd. (hereinafter referred to as Cohen Sons); a buying agency agreement entered into by Cohen Sons and appellant (attached to and a part of exhibit 3); the testimony of Leonard I. Cohen, general manager of appellant and president of Cohen Sons, the only witness who testified in this case; and the official papers.

Appellee's evidence consists of a copy of a letter dated May 24, 1963 written by Mr. Cohen to Howard C. Carter, Esq., of Sharretts, Paley & Carter, counsel for appellants, received as defendant's exhibit A.

The pertinent facts may be summarized as follows:

Appellant, a partnership, is engaged in merchandising men's and boys' wearing apparel imported primarily from Japan and Hong Kong. In 1963, the year the shipments involved herein were exported, Leonard Cohen was appellant's general manager, and was responsible for managing appellant's business, including the purchasing and merchandising of goods.

Cohen Sons, a corporation located in Hong Kong, acts as a buying agent for various principals who purchase merchandise in Japan, Taiwan, and Hong Kong for exportation to the United States. Additionally, Cohen Sons purchases merchandise for its own account for exportation to countries other than the United States. Although appellant was the sole United States importer through Cohen Sons, the latter acted as a buying agent for firms outside the United States.

Leonard Cohen, in addition to his position as appellant's general manager in 1963, also served as president of Cohen Sons and was responsible for conducting the affairs of the corporation. Four partners who had a controlling interest in appellant also had a controlling inter-

condition, packed ready for shipment to the United States.

The articles do not appear on the Final List, T.D. 54521.

est as stockholders in Cohen Sons. Defendant's exhibit A discloses the names of the four parties. Hence, appellant and Cohen Sons were substantially under common ownership and management, although legally the two businesses were separate.

Cohen Sons, being located in Hong Kong, conducted its business affairs in Japan through the firm of R. Reiss, which did the buying and was paid a commission by Cohen Sons. Appellant had no direct business dealings with the Reiss firm.

Prior to January 1, 1963, Cohen Sons purchased goods in the Far East for its own account and resold them to appellant. However, on January 1, 1963, the relationship between appellant and Cohen Sons was changed from that of buyer and seller to that of principal and buying agent. Although the relationship between appellant and Cohen Sons had changed, Mr. Cohen's relationship with both firms remained the same, and Cohen Sons performed essentially the same services for appellant in 1963 as in 1962, except that the merchandise was purchased by appellant directly from the suppliers in the Far East rather than from Cohen Sons, who acted as appellant's agent rather than seller. Mr. Cohen testified (R. 32):

Q. Cohen Sons was making the purchases directly [prior to the change]?—A. Yes. And after this change was made Park Avenue Imports was making the purchases directly. This is a significant difference.

Mr. Cohen stated the reason for the changed relationship as follows (R. 30):

The reason for the change was the question of the economics involved. Park Avenue Imports wasn't making very much money and it had to do something to reduce its cost of purchasing merchandise. And at the same time this question came up with customs on the dutiable. Customs was taking the position on this direct sale that the purchase price that was paid to Cohen Sons was the dutiable value rather than the original purchase price from, let's say, Mitsui or Manhattan. And, as we have said, the firms were inter-related closely. And we negotiated a change of our arrangement with Cohen Sons.

In view of the change in the relationship between appellant and Cohen Sons, the parties entered into a written agreement providing that Cohen Sons undertake: to visit manufacturers in Hong Kong, Japan, or Taiwan, either directly or through subagents; collect samples to be submitted to appellant; secure price quotations from manufacturers; place orders directly or through subagents with manufacturers when instructed to do so by appellant; inspect purchased merchandise; prepare appropriate shipping documents; and pay inland charges that accrue after the merchandise leaves the factory, for appellant's account. The agreement further provides that appellant is to pay a commission of 3.5 percent of the f. o. b. price to Cohen Sons, "as in the past."

Mr. Cohen signed the agreement as president of Cohen Sons, and it was signed on behalf of appellant by one of the latter's general partners. Although the agreement is dated January 25, 1963, it is recited therein that the effective date is January 1, 1963.

In reappraisement R64/3814, there is an invoice in the official papers representing a sale by Mitsui & Co., Ltd., Kobe, Japan of fourteen cartons of boys' flannel lined pants to appellant "through Cohen Sons Trading Co., Ltd." The manufacturer of the goods is stated on the invoice to be F–One Ltd., Osaka, Japan. Also included in the official papers is a separate invoice from Cohen Sons to appellant, referring to the Mitsui invoice, for "3½% Buying Commission on above [14 cartons of boys' flannel lined pants]."

In reappraisement R64/12650, the official papers include an invoice representing a sale by Manhattan Garments, Ltd., Hong Kong, of twenty cartons of

boys' cotton pants to appellant "through Cohen Sons Trading Co., Ltd." There is also an invoice from Cohen Sons to appellant, referring to the Manhattan Garments invoice, for "3½% Buying Commission on the above [20 cartons of boys' pants]."

Mr. Cohen testified that he was familiar with the transactions represented by the foregoing invoices, having arranged for the purchase of the goods by appellant through Cohen Sons. In connection with those transactions, Cohen Sons performed the services specified in the buying agency agreement for which appellant paid Cohen Sons a commission of 3½ percent of the invoiced f. o. b. price. Cohen Sons purchased the merchandise covered by the two invoices as buying agent for appellant rather than for its own account, and hence was neither the seller of the goods, nor acting as an agent of either Mitsui or Manhattan Garments.

Until May 27, 1963, Cohen Sons owned a minority interest (approximately 28 percent) in Manhattan Garments, a Hong Kong corporation, of which appellant was aware. Cohen Sons also owned a small interest, approximately $5,000 worth of shares, in the manufacturer, F-One, with which it apparently had no dealings respecting the transactions involved herein. None of the commissions received by Cohen Sons was paid to or inured to the benefit of either of the sellers, Mitsui or Manhattan Garments. Appellant could have purchased the merchandise involved in this case at the same prices it instructed Cohen Sons to pay on its behalf, directly from Mitsui or Manhattan Garments, without the intervention of Cohen Sons, although it never attempted to do so.

Mr. Cohen was uncertain of how appellant paid for the merchandise or buying commission in 1963, and he did not recall any instances where the credit of Cohen Sons was utilized by appellant subsequent to entering into the buying agency agreement. However, in 1963 the goods were billed to appellant, according to the documents.

In view of the fact that the appraisements in this case were separable and the issue was limited by stipulation to the 3½ percent additions, as acknowledged by the trial court, appellant did not have the burden of proving that the involved transactions conformed to the requirements of export value as being in the ordinary course of trade, as held below, nor was it required to prove any of the other elements of export value, as urged by appellee. United States v. Gehrig, Hoban & Co., Inc., 54 CCPA 129, C.A.D. 924 (1967). Appellant was clearly entitled to rely upon the presumption of correctness attaching to the appraiser's return with respect to all elements of appraisement except the item contested, viz., the 3½ percent additions. Hence, we do not consider anything further than whether those additions represented *bona fide* buying commissions, which should not have been included in the appraised value of the merchandise. United States v. Shalom & Co., 57 Cust. Ct. 767, A.R.D. 216 (1966); Hub Floral Mfg. Co. v. United States, 60 Cust.Ct. 866, R.D. 11523 (1968); Manhattan Novelty Corp. v. United States, 60 Cust. Ct. 824, R.D. 11510 (1968); H & S Originals v. United States, 57 Cust.Ct. 704, R.D. 11244 (1966), revd. on other grounds, United States v. H & S Originals, 60 Cust.Ct. 950, A.R.D. 236 (1968); Lollytogs, Ltd. v. United States, 55 Cust.Ct. 608, R.D. 11073 (1965).

The determination of the issue presented depends, in the last analysis, upon the status of the firm of Cohen Sons. If, as contended by appellant, Cohen Sons was its *bona fide* purchasing agent, the 3½ percent additions, alleged to be buying commissions, were not properly a part of the dutiable value of the merchandise. Stein v. United States, 1 Ct.Cust.App. 36, T.D. 31007 (1910); United States v. Alfred Kohlberg, Inc., 27 CCPA 223, C.A.D. 88 (1940). If, however, Cohen Sons was in fact a seller of its own goods, or, alternatively, an agent of the sellers, then

the appraised values correctly included the disputed 3½ percent item. Pan Pacific Importers, Ltd. v. United States, 10 Cust.Ct. 530, R.D. 5804 (1943); Samuel S. Perry v. United States, 24 Cust.Ct. 546, R.D. 7794 (1950).

In Paramount Import Co., Inc., et al. v. United States, 40 Cust.Ct. 672, R.D. 9061 (1958); decided on reh. 44 Cust. Ct. 702, R.D. 9697 (1960), the court stated (at page 673):

> Whether or not an item is a buying commission is dependent on the facts in each particular case. United States v. Bauer et al., 3 Ct.Cust.App. 343, T. D. 32627. Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which although affecting the cost of goods to the importer, is not part of the market value of the merchandise, and, hence is a nondutiable item. United States v. Case & Co., Inc., 13 Ct.Cust. App. 122, T.D. 40958; United States v. Alfred Kohlberg, Inc., 27 C.C.P.A. (Customs) 223, C.A.D. 88; Stein v. United States, 1 Ct.Cust.App. 36, T.D. 31007, * * *.

■ It has been held that the *bona fides* of a commission may well be questioned when the so-called commissionaire and the manufacturer are under common control of members of the same family, or where the plaintiff and the alleged buying agent are under such common control. Fine Arts Bag Co. v. United States, 57 Cust.Ct. 625, R.D. 11224 (1966); A & A Trading Corp. v. United States, 62 Cust.Ct., R.D. 11619 (1969). However, common control *per se* of the importer and commissionaire does not preclude a finding of a *bona fide* principal-buying agent relationship, since

control of the agent by the principal is the *sine qua non* of the agency relationship. In Dorf International, Inc., et al. v. United States, 61 Cust.Ct., A.R.D. 245 (1968), the court pointed out:

> * * * It is of course basic that the decisive consideration which distinguishes a principal-agent relationship from a buyer-seller relationship is the right of the principal to control the conduct of the agent with respect to matters entrusted to him. E. g. Smith v. Cities Service Oil Co., 346 F.2d 349, 352 (7th Cir. 1965); Wasilowski v. Park Bridge Corp., 156 F.2d 612 (2nd Cir. 1946); Esmond Mills v. C. I. R., 132 F.2d 753, 755 (1st Cir. 1943), cert. denied [Esmond Mills v. Helvering] 319 U.S. 770 [63 S.Ct. 1432, 87 L.Ed. 1718] * * *

We quite agree with the following statement in appellant's brief, page 12, that:

> * * * It might even be said as a general proposition that the closer the relationship or the greater the extent of the "common control" between an exporter and an importer, for example an exporter-employee and an importer-employer, the less likelihood that the exporter is either the seller or an agent of the seller or that the exporter's remuneration inures to the benefit of the seller or constitutes a part of the purchase price.

■ If the record had shown that through appellant's control of Cohen Sons, the mere appearance or *indicia* of a buying agency relationship was created solely as a ruse to affect customs valuation,[2] and Cohen Sons was in fact a seller or an agent of the sellers, there would, of course, be a finding that no *bona fide* buying commissions were included in the appraised values. The record establishes, however, that the

---

2. See United States v. Herrman et al., 91 F. 116 (C.C.A.2 1898), wherein it was stated that a commission paid by the importer to his agent for services in procuring, forwarding, or caring for goods was not dutiable but that principle did not apply where the "commission" was a trade device to mislead customs officials and was used as the basis for a claim for a reduction from the real wholesale price.

services specified in the buying agency agreement were performed by Cohen Sons; that a 3½ percent commission was paid by appellant for those services; that Cohen Sons did not purchase the merchandise for its own account, but rather on behalf of appellant; and that Cohen Sons was neither the seller nor agent of the seller of the goods.

The foregoing essential facts with respect to the status of Cohen Sons were not effectively controverted by any evidence adduced by appellee. The latter presented no evidence that the agreement of January 25, 1963 did not exist, or was not performed with respect to the transactions herein involved, or that appellant in fact paid no commission to Cohen Sons. Consequently, we hold that the identity of interest between appellant and Cohen Sons, under the facts of record in this case, does not militate against a finding that Cohen Sons acted as appellant's *bona fide* buying agent.

Further, the mere showing of Cohen Sons' stock interest in the manufacturer F-One is of no significance in this case, since there was nothing in the record to indicate any privity between Cohen Sons and F-One, or that any of the commissions paid to Cohen Sons inured to the benefit of either F-One or Mitsui. Similarly, Cohen Sons' minority interest in Manhattan Garments is not significant in view of appellant's unrebutted evidence that none of the commission inured to any sellers, or that Cohen Sons was not acting as an agent of Manhattan Garments. Additionally, we see nothing in the record which suggests that Cohen Sons was under the control of Mitsui, Manhattan Garments, or F-One. In light of the foregoing, the facts of this case are clearly distinguishable from those in Fine Arts Bag Co., *supra,* cited by the court below, wherein a so-called commissionaire was held not to constitute a *bona fide* buying agent, where the commissionaire and the manufacturer, both being partnerships, were under the common control of members of the same family; and part of any commission earned would inure to the partners of the manufacturer.

■■ Although appellant did not offer in evidence any correspondence, orders, confirmation of orders, letters of credit, or checks, as pointed out by the trial judge, appellant's other oral and documentary evidence sufficed in our opinion to overcome the presumption of correctness attaching to the appraised values. Appellant was not bound to prove its case to a moral certainty and beyond a reasonable doubt, but by a simple preponderance of credible evidence. Cf. United States v. Edson Keith & Co., 5 Ct.Cust.App. 82, T.D. 34128 (1914). Moreover, there is no requirement in customs law that testimony be corroborated, and though lack of corroboration might go to the weight of the evidence, it would not affect its sufficiency. United States v. F. W. Myers & Co., Inc., 45 CCPA 48, C.A.D. 671 (1958); Walter Auster v. United States, 45 Cust.Ct. 230, Abstract 64432 (1960).

We conclude that appellant's evidence is sufficient to establish a *prima facie* case in favor of its claim. Since we find that the additions of 3½ percent to the invoice f. o. b. prices by the appraiser were erroneous, the effect is to leave the f. o. b. unit prices in each entry as the correct export values.

This court, therefore, makes the following findings of fact:

1. That the merchandise involved herein consists of boys' cotton trousers exported from Hong Kong and Japan during the year 1963 and entered at the port of Chicago, Illinois.

2. That the merchandise is not among the articles enumerated in the Final List of the Secretary of the Treasury, T.D. 54521, issued pursuant to the Customs Simplification Act of 1956.

3. That the merchandise was entered at the invoiced f. o. b. unit prices.

4. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, at the invoiced unit values plus 3½ percent, packed.

5. That pursuant to the stipulation of the parties and under the so-called separability rule (See United States v. Gehrig, Hoban & Co., Inc., 54 CCPA 129, C.A.D. 924) appellant's burden of proof is limited to proof that Cohen Sons Trading Co., Ltd., of Hong Kong, was the *bona fide* buying agent of appellant in the transactions involved herein.

6. That appellant's oral and documentary evidence establishes *prima facie*, that in the purchase of the merchandise, Cohen Sons Trading Co., Ltd. acted in the capacity of a *bona fide* buying agent for Park Avenue Imports under a written agreement, pursuant to which Cohen Sons performed the required services and was compensated therefor 3½ percent of the invoiced f. o. b. prices, no part of which inured to the benefit of Mitsui & Co., Ltd., Manhattan Garments, Ltd., or F-One Ltd.

This court, therefore, concludes as matters of law:

1. That the merchandise is properly dutiable on the basis of export value, as that value is defined in Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165.

2. That the export values are the invoiced f. o. b. prices, which excludes the 3½ percent additions constituting *bona fide* buying commissions.

The judgment of the trial judge is reversed.

Judgment will be entered accordingly.

RAO, C. J., and FORD, J., concur.