(R.D. 11678)

VANCE LUMBER CO. (WILEY) *v.* UNITED STATES

Entry No. 224211, etc.

(Decided September 23, 1969)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert T. Richardson* and *Robert E. Burke*, trial attorneys), for the defendant.

WILSON, Judge: Twenty-four appeals for reappraisement were consolidated for trial in this case. The imported merchandise consists of different thicknesses and types of hardboard exported from Australia by the manufacturers, Burnie Board & Timber Proprietary, Ltd. (hereinafter Burnie), between January 28, 1965, and January 11, 1967. Plaintiff, at the trial and in its brief, limits these appeals to hardboard of the following eight invoiced items, to wit: $\frac{1}{8}''$, $\frac{3}{16}''$, and $\frac{1}{4}''$ Standard; $\frac{1}{8}''$, $\frac{3}{16}''$, and $\frac{1}{4}''$ Oil Tempered; $\frac{1}{8}''$ Standard Shorts and $\frac{1}{8}''$ Standard Shorts, Perforated.

The appraisements were made at varying prices for the above eight different invoiced sizes and types, which prices are claimed to be, in defendant's brief and in its notice under Rule 15 of this court, on the basis of cost of production, section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

Plaintiff's brief agrees that such or similar merchandise was not freely offered or sold to all purchasers for home consumption, and that such merchandise made by the manufacturing exporter herein was not freely offered or sold to all purchasers for exportation to the United States. Plaintiff's notice under Rule 15 sets forth prices, as does its brief filed herein, which it is claimed represent the export values under section 402a(d) of said amended tariff act. The brief contends for said basis of valuation on the ground that "similar" hardboard was freely offered for sale to all purchasers in the principal markets of Australia in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, by Colonial Sugar Refining Company, Limited, the only other Australian manufacturer during the period in question.

Counsel stipulated, and the court finds, that hardboard appears on the final list promulgated by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521. The imported merchandise is therefore subject to appraisement under either section 402a(d) *supra*, as claimed by the plaintiff, or section 402a(f) *supra*, as claimed by the defendant, the result depending upon the evidence, or lack thereof, in the record herein.

The evidence consists of two affidavits offered by the plaintiff which are marked exhibits 1 and 2. The official papers in all appeals were admitted without being marked. Neither party offered oral testimony, and the defendant did not offer documentary exhibits.

The plaintiff filed a brief and a reply brief. The defendant filed a brief and a surreply brief.

The primary question presented by the contentions of the respective parties and the evidence of record, is whether or not the importer has established a statutory export value for "similar" hardboard. In essence, plaintiff concedes that the appraised basis of cost of production is correct if there is no statutory export value for "similar" merchandise. If there is a statutory export value for "similar" merchandise, an appraisement thereunder would prevail over an appraisement under cost of production. Section 402a(a)(1)(2)(3) of the above amended tariff act.

The statutes considered are as follows:

Section 402 of the Tariff Act of 1930 was amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and was redesignated "SEC. 402a VALUE (ALTERNATIVE)" which reads in relevant part:

SEC. 402a VALUE (ALTERNATIVE).

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

[SEC. 402a] (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when

not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

[SEC. 402a] (f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Exhibit 1 is an affidavit by Dennis Vaughan. He alleges that he was sales administration executive for Burnie from January 1965 to May 1965 when he became manager of Australian Hardboard Export Co. Pty., Limited (hereinafter Hardboard Export), which position he held through January 1967; that said company was set up as the sole export selling agent for hardboard for Burnie and for Colonial Sugar Refining Company, Limited (hereinafter Colonial), the only other manufacturer of hardboard in Australia; that as said executive for Burnie he was involved in organizing and supervising the selling of hardboard manufactured by that firm both for home consumption and for exportation to the United States and to third countries; that he had personal knowledge of the selling prices and policies of Burnie between January 1, 1965, and May 1, 1965; that for home consumption in Australia that firm sold its hardboard through franchised wholesalers who were given either by themselves or jointly with other franchised wholesalers a particular State or territory in Australia only within

which the wholesalers could resell; that at the same time his firm sold hardboard direct to original equipment manufacturers such as industrial users, and also reserved the right to sell to Government departments.

Mr. Vaughan also states that in selling hardboard for exportation to the United States during said period from January 1, 1965 to May 1, 1965, Burnie either sold to exclusive distributors who were limited to a particular territory in the United States within which the distributors could resell, or sold to others who were at liberty to resell any place in the United States except in those particular exclusive territories which were given to these exclusive agents; that during said period Colonial was the only other manufacturer of hardboard in Australia.

Mr. Vaughan further alleges that Hardboard Export was set up as the sole hardboard export selling agent for Burnie and Colonial and that it was his duty to carry out the selling policies which were determined by those principals, and to maintain the selling practice of each of them, separately, if necessary. He asserted that each of those principals did not necessarily offer the same identical hardboard for the same price or prices; that in addition, Burnie still maintained its policy of selling to exclusive distributors who were limited to a particular territory while Colonial did not have any restrictions on its offers or sales of its hardboard to the United States.

In his affidavit Mr. Vaughan lists prices which he states did not vary because of the quantity purchased, which prices are said to be for various sizes and qualities of hardboard offered and sold for exportation to the United States by Hardboard Export for Colonial, free of any selling commission charged or received by said Hardboard Export from Colonial from May 1, 1965 through January 1, 1967. The prices are said to be based on the then current freight rates of $31.90 U.S. per 40 cubic feet. Included in the list are alleged prices for 1,000 square feet, c.i.f. net U.S. dollars* for the periods from May 1, 1965 to June 11, 1965, and from June 12, 1965 to January 1, 1967, for the alleged "similar" hardboard. The list covers all the eight invoiced items to which plaintiff has limited its appeals for reappraisement. Plaintiff's brief alleges a method of obtaining the claimed *net price of the eight items imported* based upon said alleged "similar" merchandise that Colonial exported through Australian Hardboard.

Exhibit 2 is an affidavit by James Charles Milton who alleges that he was the controller of the Fibreboard Group of Colonial Sugar

---

*The figure of $31.90 U.S. per 40 cubic feet is based upon statements by Vaughan and by Milton which are not supported by any factual proof. Nor does either affiant state that Colonial's prices, which are alleged to be on a c.i.f. basis, were actually based upon an identical ocean freight rate to each and every United States port, whether along the east coast, west coast or gulf coast, or whether Colonial's hardboard could be purchased in Australia for exportation to the United States at a price exclusive of ocean freight.

Refining Company, Limited, during 1965, 1966 and up to January 15, 1967; that said firm manufactures hardboard in Australia; that as controller, a position he has held since November 1960, he was involved in the administration of the selling of hardboard manufactured by that firm, both for home consumption and for exportation to the United States and to third countries; that he had personal knowledge of the selling prices and policies of Colonial between January 1, 1965 and January 16, 1967; that his firm sold hardboard for home consumption through franchised wholesalers who were given either by themselves or jointly with other franchised wholesalers a particular State or territory in Australia only within which the wholesalers could resell; that at the same time his firm sold hardboard direct to original equipment manufacturers such as industrial users, and reserved the right to sell to governmental departments.

Mr. Milton also states that in selling for exportation to the United States during the above period his firm made hardboard freely available to users or sold to others who were at liberty to resell at any place in the United States; that during said period Burnie was the only other manufacturer of hardboard in Australia.

Mr. Milton further alleges that in May 1965, in addition to his above described duties, he became secretary of Hardboard Export which was set up as the sole export selling agent for hardboard for Burnie and for Colonial. He states that based on the then current freight rate of $31.90 U.S. per 40 cubic feet, the prices at which Colonial freely offered and sold its hardboard for exportation to the United States from January 1, 1965 through April 30, 1965, which prices did not vary because of quantity purchased, were as shown in a list of prices per 1,000 square feet, c.i.f. net U.S. dollars (note footnote *supra*), which list is identical as shown in exhibit 1 for the period from May 1, 1965 to June 11, 1965.

The evidence disclosed that Vaughan alleges personal knowledge of Burnie's selling prices between January 1, 1965 and May 1, 1965, during which period that firm limited its export sales to exclusive territorial distributors in the United States within which they were limited as to resales, or where Burnie sold to others in the United States that were not so confined, except as to the particular exclusive territory of the aforementioned distributors. That situation eliminates a finding of a statutory export value for hardboard such or similar to that exported by Burnie. While Vaughan was thereafter, from May 1965 through January 1967, manager of Hardboard Export, there is no evidence to the effect that the hardboard manufactured by Burnie and by Colonial was, during the periods here involved, in fact "similar" within the judicial construction of that term by the customs courts while "such or similar" merchandise appeared in the past several tariff acts.

Neither of the affiants in exhibits 1 and 2 affirmatively asserts *similarity* between the products of Burnie and Colonial, and the court may not supply that element of necessary proof. *United States* v. *Malhame & Co.*, 19 CCPA 164, 167, T.D. 45276 (1931). If it be presumed that the products of those two firms are *used* in the same way, which the court may not do on the record, there is no showing whether the treatment by those firms in producing its individual product, in fact produces one or more qualities, such or similar to the one or more qualities produced by the other firm.

In *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 CCPA 224, C.A.D. 21 (1938), the court held that a different treatment during the course of processing so-called Roquefort portion cheese did *not* produce "similar" cheese to so-called standard Roquefort cheese. Moreover, use alone would not in itself create similarity. Use *plus* approximate price, construction and commercial interchangeability could make articles manufactured by different producers *similar* for tariff purposes. *T.W. Holt & Co.* v. *United States*, 23 Cust. Ct. 243, Reap. Dec. 7714 (1949), affirming *T.W. Holt & Co.* v. *United States*, 20 Cust. Ct. 367, Reap. Dec. 7523 (1948) ; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714 (1928).

In the case at bar, the description of the imported merchandise and that of Colonial, while stated in similar commercial language, does not necessarily create similarity for tariff purposes. Mr. Vaughan in exhibit 1 seems to realize this when he stated that, "For example, each of the two principals did not necessarily offer the same identical hardboard for the same price or prices." That expression seems to indicate that more than one quality of hardboard was manufactured by one or the other, Burnie or Colonial, or both.

In *United States v. Irving Massin & Bros.*, *supra*, the court stated at page 23 that "The law does not use the words 'such' and 'similar' synonymously, but with differing meanings, and alternatively." At page 25 the court stated "In view of the common meaning of the word 'similar' and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402(b)." (Section 402(b) of the Tariff Act of 1922.) See also *Meadows, Wye & Co. (Inc.) et al* v. *United States*, 17 CCPA 36, T.D. 43324 (1929).

In *United States v. Wecker & Co.*, 16 Ct. Cust. Appls. 220, 224, T.D. 42837 (1928), the court states:

> Applying the rule laid down in the *Massin* case, *supra*, we must come to the conclusion that there is substantial evidence in the record in support of the judgment of the court below, finding that

the imported goods are not similar to the comparable German qualities. There is some substantial evidence that the goods are not made of approximately the same material and that they are not commercially interchangeable. We have already adverted to the fact that there is no proof in the record of any kind as to their use or adaptability therefor.

In the case at bar there is no substantial evidence in the record that Colonial's goods are similar to the imported goods of Burnie. There is no substantial evidence that the goods are made of approximately the same material and that they are commercially interchangeable either in Australia or in the United States. Nor is there any specific proof as to the use or adaptability of any thickness and type of Colonial's hardboard which is similar to any thickness and type of Burnie's hardboard.

In *United States* v. *F. Vietor & Achelis*, 17 CCPA 412, T.D. 43864 (1930), the court held that where it appears that two qualities of ribbon are not made of approximately the same materials, and are not commercially interchangeable, they are not "similar" for appraisement purposes, although they may be adapted to substantially the same uses.

In *United States* v. *The American Bluefriesveem, Inc.* (*Van Houten Co.*), 22 CCPA 67, T.D. 47063 (1934), the court held that there was substantial evidence that the imported merchandise and that manufactured by others in Holland are made of the same material, by the same processes, are adapted to the same uses, and so used, are commercially interchangeable as testified to by witnesses, and are therefore "similar", citing *United States* v. *Thomas & Co.* (*Dehler-Signoret Corp.*), 21 CCPA 254, T.D. 46788 (1933). No evidence to the foregoing effect is of record in the case at bar.

In *Japan Import Co.* v. *United States*, 24 CCPA 167, T.D. 48642 (1936), the court held on the evidence and an inspection of the imported goods and domestic articles, that the merchandise was "like or similar" under American selling price, section 402(g) of the Tariff Act of 1930, by virtue of the Presidential proclamation issued February 1, 1933, 63 Treas. Dec. 233, T.D. 46158. Such affirmative evidence is lacking in the instant case.

In *H.J. Heinz Company* v. *United States*, 43 CCPA 128, C.A.D. 619 (1956), the court stated that two items of merchandise are "similar" if they are of approximately the same price, approximately the same materials, and are adapted to the same use and may be substituted for each other. Herein there is no probative evidence of the elements necessary for "similarity".

In *C. J. Tower & Sons* v. *United States*, 50 CCPA 76, 81, C.A.D. 824 (1963), the court stated:

> The Appellate Term seemed to find support in law for its position on this point in observing that "The question as to similarity

of material has recently been given a much broader interpretation than heretofore in the case of *United States* v. *The Heyman Co., Inc.*, 48 CCPA 13, C.A.D. 755. We cannot agree. In the *Heyman* case istle fiber pads were found to be "similar" to imported henequen fiber pads even though the court acknowledged that the pads "are not identical" and that there was a "price differential" there between. We feel that the *Heyman* case directly supports the position we are constrained to take in the instant case. That case clearly indicates that the overriding consideration in determining similarity, be it merely similarity of materials or overall similarity of merchandise for appraisement purposes, is *commercial interchangeability* rather than considerations of ultimate use or cost of production. The *Kraft Phenix Cheese Corp. et al.* case, *supra*, is here in point, indicating that even when the "same materials" are used in making different products, similarity need not always be found. See also in this regard, *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 143, C.A.D. 748, involving the commercial interchangeability of "Husqvarna" and "Brno" rifles having e.g., differently constructed sights and bolt handles.

Rubber-tipped bobby pins involved in the *Tower* case, *supra*, were held NOT "similar" to nonrubber-tipped bobby pins. Because of the lack of probative evidence on the question of similarity a holding under export value, section 402a(b), *supra*, as contended for by plaintiff, is impossible.

In addition to the lack of probative evidence of record as to *similarity* there is also a failure to disclose the names and addresses of alleged United States purchasers who bought hardboard from Colonial. Therefore, the prices alleged in exhibits 1 and 2, and contended for by plaintiff, are without probative value. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 CCPA 19, 23, C.A.D. 118 (1940).

Vaughan alleges that the prices are those of Colonial from May 1, 1965 to June 1, 1965, and from June 12, 1965 to January 1, 1967. He does not assert that *he* prepared the lists of prices, kept them under his control, or took them from the books of Colonial. Nor does he state his familiarity with such lists or with the prices. He merely asserts that the prices are "Based on the then current freight rate of $31.90 U.S. per 40 cu. ft." and are "Prices per 1,000 sq. ft. c.i.f. net U.S. $."

Milton alleges "That based on the then current freight rate of $31.90 U.S. per 40 cft. the prices at which we freely offered and sold the hardboard for exportation to the United States from January 1, 1965 through April 30, 1965 are as follows:" He likewise shows alleged prices for that period "per 1,000 sq. ft. c.i.f. Net U.S. $." He also fails to show who prepared and kept the list of prices, or whether it was

kept under his control or whether the prices were taken from Colonial's books or whether specifically he was personally familiar with *such* prices.

The foregoing allegations by Vaughan, exhibit 1, and by Milton, exhibit 2, are completely inadequate and insufficient to show personal knowledge and familiarity with the above subject matter. Without such knowledge and familiarity their allegations in respect thereto are merely ultimate conclusions of fact or law. They are not supported by any probative affirmative evidence. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952) ; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955).

Plaintiff's reply brief quotes from *Park Avenue Imports* v. *United States*, 62 Cust. Ct. 1035, A.R.D. 255 (1969), wherein the Appellate Term, Second Division of this court stated that appellant's oral and documentary evidence sufficed to overcome the presumption of correctness attaching to the appraised values.

In the case at bar, appraisement was made on the statutory basis of cost of production. Plaintiff did not offer any evidence on the question of cost of production. Hence, the appraisements thereunder must remain in full force and effect, unless the plaintiff herein establishes a statutory export value for *similar* hardboard as contended for by it.

Defendant's surreply brief points out that in said *Park Avenue* case, counsel stipulated that the sole question was whether a certain buying commission was *bona fide*. Three affidavits, a buying agency agreement, and the testimony of the general manager of the importing company were in evidence.

The court held that under such circumstances, the proof was sufficient to establish the existence of a *bona fide* buying agency. This court does *not* find evidence in the case at bar to meet the standard of proof disclosed by the facts in the *Park Avenue* case *supra* and cannot hold that plaintiff's documentary evidence sufficed to establish *prima facie* a statutory export value for *similar* hardboard, which if established, would make the appraisements ineffectual.

Plaintiff's reply brief also alleges that hardboard is a basic building commodity which is provided for in items 245.00 through 245.30 of the Tariff Schedules of the United States (TSUS). Further, that it is identical in substance; differs only in surface finishes and thicknesses; that one sheet of 1/8″ standard is a substitute for another sheet of 1/8″ standard; that one sheet of 1/4″ oil tempered is a substitute for another sheet of 1/4″ oil tempered. These statements by counsel are not borne out by the record.

Accordingly, after reviewing and considering the facts of record herein, the lack of certain necessary facts, the arguments advanced by respective counsel, and the law, I conclude that plaintiff has failed to

present a *prima facie* case on either its claimed export value basis or the amount for each imported item. The appraised values remain in full force and effect. 28 U.S.C. § 2633. *Kobe Import Co.* v. *United States*, 42 CCPA 194, 196, C.A.D. 593 (1955); *I. Arditi* v. *United States*, 50 CCPA 49, 51, C.A.D. 818 (1963), and cases cited.

On the record, I make the following:

### FINDINGS OF FACT

1. The twenty-four appeals for reappraisement which were consolidated for trial involve hardboard of different thicknesses and types, manufactured and exported by Burnie Board & Timber Proprietary, Ltd. of Australia, between January 28, 1965 and January 11, 1967.

2. Plaintiff at the time of trial and in a brief filed in its behalf, limits these appeals to hardboard of the following eight invoiced items, to wit: ⅛″, ³⁄₁₆″, and ¼″ Standard; ⅛″, ³⁄₁₆″, and ¼″ Oil Tempered; ⅛″ Standard Shorts and ⅛″ Standard Shorts, Perforated.

3. The appraisements in these 24 appeals were made at varying prices for the above eight different invoiced sizes and types, which prices the defendant claims to be on the basis of cost of production, section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. The plaintiff claims that the involved hardboard should be held subject to appraisement on the basis of export value under section 402a(d) of the above amended tariff act on the ground that "similar" hardboard made by another Australian manufacturer, during the period in question, freely offered or sold to all purchasers in the principal market, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at the values stated in its notice under Rule 15 of the rules of this court, and as also contained in its brief filed herein.

5. Counsel stipulated and the court finds that hardboard appears on the final list promulgated by the Secretary of Treasury in 93 Treas. Dec. 14, T.D. 54521.

6. In essence plaintiff concedes that the appraised values on the basis of cost of production, *supra*, are correct (no evidence to the contrary thereof having been introduced). The plaintiff has failed to establish statutory export values for "similar" hardboard.

On the record, I make the following:

### CONCLUSIONS OF LAW

1. There is insufficient probative evidence to the effect that the hardboard produced by Burnie and the hardboard produced by Colonial are in fact and law "similar" within the meaning of that word

in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. *United States* v. *Irving Massin & Bros.* and other cases cited herein, *supra.*

2. Failure to establish "similarity" precludes a holding that export value, section 402a(d), *supra*, is the proper statutory basis for appraisement of the imported hardboard within contemplation of section 402a(1)(2)(3) of the said amended tariff act.

3. The appraised value for each invoiced item of hardboard in all of the 24 consolidated appeals for reappraisement on the basis of cost of production, section 402a(f) of said amended tariff act, remains in full force and effect.

Judgment to that effect will be entered.