**BUSHNELL INTERNATIONAL, INC.**
**v.**
**UNITED STATES.**

R.D. 11714;  Reappraisements R68/5857,
R68/5858, R68/5859.

United States Customs Court.
June 25, 1970.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Morris Braverman, New York City, trial attorney), for defendant.

WATSON, Judge:

These appeals for reappraisement were consolidated for the purpose of trial and cover certain binoculars, field glasses and other optical goods exported from Japan during the period from July to September 1964.

The parties are in agreement that the merchandise does not appear on the so-called "final list" and the proper basis of appraisement is export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Plaintiff claims that the proper export value herein is the invoiced ex-factory unit price and contends that the ap-

praised value includes certain amounts for buying commissions and inspection fees which should not form part of the export value since they were payments made to a buying agent for services rendered.

The appraisement herein is separable and the issue is confined to the question of whether or not the importations were freely offered and sold at the ex-factory unit prices without the charges added thereto by the appraising official. The supplementary issue is whether or not the buying commissions and inspection fees shown on the invoices are bona fide, non-dutiable buying commissions and fees.

With one major exception, which will be discussed in its place, the facts herein are similar to those which have been before this court in other situations in which a purported buying commission has been at issue.

Plaintiff's president testified that during the period in question an agreement was in effect designating the Oriental Trading Co. as buying agent for plaintiff. Pursuant to said agreement, the purported buying agent accompanied plaintiff's president to his negotiations with the manufacturers, interpreted when necessary, arranged for the transportation and exportation of the merchandise in question, and inspected it in accordance with rigorous inspection standards developed by plaintiff. For these services Oriental Trading Co. received a 5 percent buying commission and a 2 percent inspection commission. These services were provided in connection with merchandise purchased from Ohta Optical Co., Meiji Seiko KK and Toyo Jitsugyo KK.

■ The appropriate officials of the manufacturers, in affidavits, and plaintiff's president, in testimony, assert that the merchandise in question was freely offered for sale at ex-factory prices. The affidavits of the manufacturers including the supporting material attached thereto support the view that the merchandise they sold to plaintiff and which is involved herein, was available to all purchasers at ex-factory prices. In addition, the record includes certain cost records kept by plaintiff's president which were introduced in evidence for the purpose of demonstrating that the ex-factory price was the price utilized by him in his records of purchases. Certain discrepancies between the prices listed in these records and the invoice prices were adequately clarified in additional testimony as being the result of certain of the imported items ultimately being purchased without cases.

With respect to entry 209945 covered by reappraisement R68/5859, the parties stipulated that the freely offered price for export to the United States in wholesale quantities and in the ordinary course of trade of the merchandise invoiced as "Eagle 100 pcs. of 'Bushnell' 7 x 18 MCF", and shown on the invoice as having been manufactured by Meiji Seiko KK, was its ex-factory invoice unit price of $8.28 per unit.

■ We are further satisfied that the Oriental Trading Co. acted as a genuine buying agent with respect to the purchases herein made from the Ohta Optical Co. Accordingly, the buying commissions and inspection fees incurred in connection with said purchases are bona fide and are not to be included in the dutiable value.

■ The record reveals that the Oriental Trading Co. is the export division of Toyo Jitsugyo KK. This essential fact causes us to take a completely different view regarding the relationship between plaintiff and Oriental Trading Co. with respect to the importations manufactured by Toyo Jitsugyo KK.

Plaintiff contends that the bona fides of the purported buying commissions and inspection fees paid to Oriental Trading Co. should not be affected by the fact that said entity is nothing but the export division of the manufacturer and contends that Oriental nevertheless performed all the services customarily

associated with the role of buying agent. In addition, plaintiff introduced evidence tending to show that the financial affairs of the export division were kept completely separate from the financial affairs of the manufacturing segment. Furthermore, plaintiff cites the cases of Kurt Orban Company, Inc. v. United States, 52 CCPA 20, C.A.D. 851 (1965), and United States v. Tapetes Luxor S.A. et al., 54 CCPA 116, C.A.D. 921 (1967), in support of the proposition that the intimacy or even identity between Oriental and Toyo Jitsugyo does not disqualify the former from being a bona fide buying agent.

We do not agree with the contentions made by plaintiff. The evidence establishes that Oriental Trading Co. is not in the slightest degree an independent entity. The keeping of separate financial records within the corporate structure is hardly sufficient to establish that Oriental is anything more than the export section of the company. In the end, its profits or losses are attributable to the profits or losses of the entire company.

It is of no moment that Oriental Trading Co. may have considered itself to be a relatively independent entity, represented itself to plaintiff as an independent entity, was considered by plaintiff to be an independent entity and is characterized as such in various agreements between the parties. It is the duty of this court to look to the realities of business relationships and not be influenced by the characterizations given such relationships by the parties. Shalom Baby Wear, Inc. v. United States, 62 Cust.Ct. 856, R.D. 11641 (1969). The realities of this situation are undisputed. In consequence thereof, Oriental Trading Co. though it simulated the role of buying agent, could not transmute itself and could not possibly be a bona fide buying agent within the requirements of the law. An agent cannot act for a principal in negotiations with the selfsame agent. A principal cannot exert genuine control over an agent who is identical with the opposing party in negotiations. The agency is illusory and the principal is actually dealing directly with the opposing party. The cases cited by plaintiff as supporting a finding of agency in such a situation, are clearly distinguishable. In Kurt Orban Company, Inc. v. United States, *supra*, the agent was a separate company wholly owned by the manufacturer. In United States v. Tapetes Luxor, *supra*, the agent was a separate company wholly owned by six manufacturers. In both these cases the control possessed by the manufacturers was not such as to preclude the possibility of the agent acting under the direction and on behalf of the purchasers. We view this exertion of genuine control as the *sine qua non* of the agency relationship. See, Dorf International, Inc., et al. v. United States, 61 Cust.Ct. 604, A.R.D. 245 (1968); Park Avenue Imports v. United States, 62 Cust.Ct. 1035, A.R.D. 255 (1969).

In sum, the realty of the relationship herein is as follows: Plaintiff purchased the imported merchandise from the manufacturer and paid to the export division of said manufacturer additional fees for services such as "negotiations", handling of the exportation and inspection. It appears from the record that plaintiff could have purchased the same merchandise from the manufacturer through the use of an independent buying agent. This fact, though it emphasizes the regrettable results of plaintiff apparently being unaware of the true nature of the parties with whom it was dealing, cannot alter the outcome herein.

In light of the above I make the following findings of fact:

1. That the merchandise covered by these appeals for reappraisement consists of binoculars and cases, and other optical goods, exported from Japan and imported into the United States during the period from August 1964 through October 1964.

2. That the merchandise does not appear on the Final List, T.D. 54521, promulgated by the Secretary of the Trea-

sury pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. That the merchandise was appraised at the invoiced unit values, plus items marked "X", which included inland charges, buying commissions, and inspection fees.

4. That Oriental Trading Co. acted as buying agent in connection with plaintiff's purchase of the merchandise involved in reappraisement R68/5859 which was manufactured by Ohta Optical Co. and Meiji Seiko KK.

5. That said merchandise was appraised at the invoiced unit values, plus items marked "X", which included inland charges, buying commissions and inspection fees.

6. That said merchandise was freely offered for sale to all purchasers at ex-factory unit prices, which did not include inland freight or other charges, or the buying commissions or inspection fees.

7. That Oriental Trading Co. is the export division of Toyo Jitsugyo KK.

8. That Oriental Trading Co. was not plaintiff's buying agent in purchases from Toyo Jitsugyo KK.

9. That the merchandise purchased from Toyo Jitsugyo KK was purchased at a price which included inland freight and other charges as well as inspection fees and so-called buying commissions.

These findings of fact warrant the following conclusions of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis of appraisement of the merchandise herein.

2. That said export value is represented by the invoiced ex-factory unit prices with respect to the merchandise described in finding of fact number 4 and is the appraised value with regard to the remaining merchandise.

Judgment will be entered accordingly.