60 CCPA

**BUSHNELL INTERNATIONAL, INC.,**
Appellant,

v.

**The UNITED STATES, Appellee.**
Customs Appeals No. 5484.

United States Court of Customs and Patent Appeals.
June 7, 1973.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

BALDWIN, Judge.

This is an appeal from a judgment of the United States Customs Court, Second Division, Appellate Term [1] affirming the judgment of a single judge sitting in reappraisement.[2] The goods are optical goods including binoculars, which were manufactured by Toyo Jitsugyo KK, exported from Japan by Oriental Trading Co., Ltd., and imported into the United States during the period August 14, 1964, through October 14, 1964. The judgments of the Customs Court upheld the appraised values returned by Customs officials.

It is agreed that the proper basis of appraisal is export value as defined by section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[3] The issue is whether certain charges paid to Oriental Trading Co., including commissions and inspection fees, were properly added to the invoiced ex-factory prices in obtaining the appraised value.

Both parties in their briefs quote the following excerpt from the opinion of the Appellate Term for a summary of the record:

> The record consists of the testimony of David P. Bushnell, president of Bushnell International, Inc., the importer herein, and a number of documentary exhibits. From the evidence, it appears that Bushnell has been importing optical goods from Japan since 1948 and that in 1950 Oriental Trading Company, Ltd., was appointed

Stein & Shostak, Los Angeles, Cal., attys. of record, for appellant. James F. O'Hara, S. Richard Shostak, Los Angeles, Cal., of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, John A. Gussow, New York City, for United States.

1. 67 Cust.Ct. 588, 331 F.Supp. 1378, A.R.D. 297 (1971).

2. 64 Cust.Ct. 765, 314 F.Supp. 48, R.D. 11714 (1970).

3. Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

its buying agent. A written agreement was entered into in 1955, according to which Oriental Trading was "to handle all the details concerning purchase of merchandise from factories on ex-factory basis, inspection at the Laboratory, export packing, storage, transportation to the port of shipment and shipping documentation" for which it was to receive a 5 percent commission on the ex-factory value of the merchandise (exhibit 1, attachment HY–1).

The Japanese name of Oriental Trading Company, Ltd., is Toyo Jitsugyo KK. The firm was formed in 1947 to serve as a buying agent. In 1956 it set up a factory branch at Kugahara, Japan. The Kugahara factory is registered as a manufacturer of binoculars and is referred to by the Japanese name of Toyo Jitsugyo KK. Oriental Trading Company, Ltd., is registered as an exporter and has retained its English name. However, Toyo Jitsugyo KK and Oriental Trading Company, Ltd., are not two separate companies; Oriental Trading is merely the export division of Toyo Jitsugyo KK.

Mr. Bushnell testified that he first became acquainted with the Toyo Jitsugyo Kugahara factory in 1956 when he was taken there on a visit to Japan. He understood that there were some common stockholders in Toyo Jitsugyo and Oriental Trading, but that in order to build a factory, additional capital was needed and other stockholders were brought in. He did not ask anyone about the specific relationship as he was interested only in getting good quality binoculars at a reasonable price. He did not learn that the Kugahara factory and Oriental Trading were related until 1966. In fact, in 1960, the working relationship between Bushnell and Oriental Trading was confirmed by a written agreement, which stated, among other things:

As our purchasing agent, you are to handle all of the details concerning the purchase of the merchandise we designate from the various factories that you deem most appropriate under the circumstances. Purchases are to be made on a freely offered ex-factory basis. You are to inspect every item to assure yourselves that each meets our high standards of quality. You are to supervise the export packing, arrange for outside storage and subsequent transportation to the port of export. You will pay all charges between the factory and the port of exportation. You are to prepare all export documentation.

All of your expenses, plus two percent (2%) for inspection fee and your five percent (5%) buying commission, are to be shown separately from the maker's ex-factory prices for the merchandise. Your charges and the maker's charges are to be shown on your invoices to us and collection made under our Letter of Credit established in your favor.

Mr. Bushnell negotiated with the Kugahara factory in the same manner as he dealt with other manufacturers at ex-factory prices. Sometimes a representative of Oriental Trading was present and sometimes not. Oriental Trading performed the same functions of inspection and shipment with respect to the merchandise manufactured by the Kugahara factory as it did with respect to merchandise manufactured by others.

An affidavit of Hideo Machiyama, chief of the Toyo Jitsugyo Kugahara factory (exhibit 2) states:

That Kugahara Factory set the sales price of its merchandise based upon its own determination of costs. That approximately 60% of the production of Kugahara Factory was sold for export to the United States to Bushnell International and was delivered through Oriental Trading Co., Ltd. That Kugahara Factory was not set up to export its merchandise, and purchasers in the

United States or in other countries required the services of some export agent to arrange for exportation of his merchandise. That in 1964 and before, the merchandise manufactured by Kugahara Factory was freely offered at the same ex-factory prices for like quantities with similar terms to United States importers through other buying agents. That offers at ex-factory prices such as those attached and marked Exhibit M–4 were also made directly by Kugahara Factory to purchasers from other countries who had export agents in Japan.
\* \* \*

Attached to the affidavit is a quotation given to Kuni Tsusho Co., Ltd., in May, 1964, setting forth unit prices for several types of binoculars and a bill to the same firm. According to an affidavit of K. Endo, president, Kuni Tsusho Co., Ltd., serves as a buying agent for American importers, had received ex-factory offers from Toyo Jitsugyo KK in June, 1964, and had made one purchase, for exportation to West Germany. (Exhibit 4.)

The appeal to reappraisement of the present goods was consolidated for trial with like appeals as to goods from two other manufacturers, Ohta Optical Co. and Meiji Seiko KK, with respect to which Oriental Trading Co. performed essentially the same services for appellant, for a like fee. Referring to the importations from all three manufacturers, the trial judge stated:

The appropriate officials of the manufacturers, in affidavits, and plaintiff's president, in testimony, assert that the merchandise in question was freely offered for sale at ex-factory prices. The affidavits of the manufacturers including the supporting material attached thereto support the view that the merchandise they sold to plaintiff and which is involved herein, was available to all purchasers at ex-factory prices. \* \* \*

The trial judge was further satisfied that Oriental Trading Co. acted as a

"genuine" buying agent for the goods of the other two manufacturers. As to the present goods, the trial judge found "the essential fact" that Oriental Trading Co. is the export division of Toyo Jitsugyo KK caused him to take the "completely different view" that Oriental Trading was disqualified from being a bona fide buying agent. On that basis, he ruled that the fees paid to Oriental Trading as to the present goods were properly included in the purchase price of these goods and upheld the appraisement.

The Appellate Term agreed with the trial judge that Oriental Trading, as a division of the manufacturer, was not a bona fide buying agent in this case. It also discussed the evidence that appellant submitted with regard to offering of the goods at ex-factory prices but stated:

In our view the evidence presented does not establish that Toyo Jitsugyo freely sold or offered its merchandise to all purchasers on an ex-factory basis or that it offered the option of purchasing either ex-factory without the participation of Oriental Trading or on some other basis.

*Opinion*

■ The appraisements here were made on the basis of invoiced "ex-factory" prices plus the disputed charges and, as found by the trial judge, are separable. Accordingly, appellant need only prove the non-dutiable character of the disputed charges which include the commissions paid by it to Oriental Trading. *Globemaster Midwest, Inc. v. United States*, 68 Cust.Ct. ——, R.D. 11758, 337 F.Supp. 465 (1971). See also *United States v. Pan American Import Corp.*, 57 CCPA 134, 428 F.2d 848, C.A.D. 993 (1970).

■■ The first question is whether the amounts paid to Oriental Trading were properly excluded from treatment as commissions so as not to be excludable from export value. The affirmative holding below on that point was based solely on the circumstance that Oriental

**1406**

Trading was a branch of the manufacturer. We think the holding was not supported by substantial evidence and was erroneous as a matter of law. The evidence that Oriental Trading performed the same services with respect to appellant's purchases from Toyo Jitsugyo as those from Meiji Seiko and Ohta Optical, which services unquestionably qualified as those of a buying agent as specifically recognized by the trial court, is uncontroverted. The fact that profits realized by Oriental Trading acting as buying agent would ultimately benefit the manufacturer does not in itself bar the commissions paid to Oriental Trading from exclusion from the dutiable cost. We see no controlling distinction between the relationship of the agent and the manufacturer here and the relationship in Kurt Orban Co. Inc. v. United States, 52 CCPA 20, C.A.D. 851 (1965), where the agent was owned by the principal mills for which it acted as agent. In accord with United States v. Tapetes Luxor S.A., 54 CCPA 116, C.A.D. 851 (1965), the business ties between the manufacturer and the agent are not necessarily determinative of the status of commissions the importer paid the agent but the question must be determined by the full circumstances as revealed by the evidence at hand. The case is clearly distinguished from B & W Wholesale Co. v. United States, 58 CCPA 92, C.A.D. 110 (1971), where there was substantial evidence that the importer did not have control over the factories from which the alleged agent ordered the goods as well as other aspects of the operation.

The remaining question is whether appellant demonstrated that Toyo Jitsugyo offered the goods at ex-factory prices. On this point, the affidavit of the chief of the Toyo Jitsugyo factory and the president of Kuni Tsusho which served as a buying agent

amount to significant evidence that Toyo Jitsugyo's goods was freely offered under circumstances that made evaluation here on the basis of ex-factory prices appropriate.[4] The trial court discussed the evidence as follows:

Plaintiff's president testified that during the period in question an agreement was in effect designating the Oriental Trading Co. as buying agent for plaintiff. Pursuant to said agreement, the purported buying agent accompanied plaintiff's president to his negotiations with the manufacturers, interpreted when necessary, arranged for the transportation and exportation of the merchandise in question, and inspected it in accordance with rigorous inspection standards developed by plaintiff. For these services Oriental Trading Co. received a 5 percent buying commission and a 2 percent inspection commission. These services were provided in connection with merchandise purchased from Ohta Optical Co., Meiji Seiko KK and Toyo Jitsugyo KK.

The appropriate officials of the manufacturers, in affidavits, and plaintiff's president, in testimony, assert that the merchandise in question was freely offered for sale at ex-factory prices. The affidavits of the manufacturers including the supporting material attached thereto support the view that the merchandise they sold to plaintiff and which is involved herein, was available to all purchasers at ex-factory prices. In addition, the record includes certain cost records kept by plaintiff's president which were introduced in evidence for the purpose of demonstrating that the ex-factory price was the price utilized by him in his records of purchases. Certain discrepancies between the prices listed in these records and the invoice prices were adequately clarified in additional testimony as being the result

4. See definitions in section 402(f), Tariff Act of 1930, 46 Stat. 407, as amended by the Customs Simplification Act of 1956, 70 Stat. 944, 19 U.S.C. § 1401a (f).

of certain of the imported items ultimately being purchased without cases.

In finding of fact No. 6, the trial court found that "said merchandise," apparently including that of all three manufacturers, "was freely offered for sale to all purchasers at ex-factory unit prices, which did not include inland freight or other charges, or the buying commission or inspection fees."

We think the trial court's analysis was correct and that appellant plainly overcome whatever presumption against Toyo Jitsugyo's freely offering the goods at ex-factory prices might have arisen from the appraisement. On the other hand, the Appellate Term has not pointed to any substantial evidence to support its conclusion to the contrary and we therefore must find that its determination on the matter of ex-factory prices was erroneous as a matter of law. The appraisements being separable, the invoice prices of the imported goods represent the correct export value.

In sum, we find that on the particular facts of this case Oriental Trading Co. acted as a bona fide buying agent for appellant even though Oriental Trading was in fact the export division of the manufacturer, and that the merchandise was freely offered for sale on an ex-factory basis. Accordingly, the decision and judgment of the Customs Court is reversed.

Reversed.