GLOBEMASTER MIDWEST, INC.
v.
UNITED STATES.
R.D. 11758; Reappraisement
No. R62/15424.

United States Customs Court.
Dec. 30, 1971.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Irving Levine, New York City, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Andrew P. Vance and Urban S. Mulvehill, New York City, trial attorneys), for defendant.

RE, Judge:

The legal question presented in this appeal for reappraisement pertains to the proper dutiable value of certain socket sets, nail pullers, circle cutters, drill chuck adaptors and corner clamps. The merchandise was exported from Japan on February 6, 1962 and entered on March 13, 1962 at the port of Baltimore. The socket sets and nail pullers were manufactured by Taguchi Tekko, also known as Taguchi Iron Works Co., Ltd.; the circle cutters and drill chuck adaptors were manufactured by Sanyko Hardware Co., Ltd.; the corner clamps were manufactured by Marui Metal Industry Co., Ltd.

The merchandise was appraised at invoice unit prices, plus certain items marked "X" on the invoices, i. e., buying commission, inland freight from factory to Kobe port, insurance premium from godown to on board, storages, hauling and lighterages.

The parties agree that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of value of the merchandise. Plaintiff, however, contends that the proper export value of the merchandise at bar should be the invoice unit prices, net packed. It maintains that an alleged buying commission paid to its agent, T. Chatani & Co., Ltd., included in the export value is *bona fide* and non-dutiable. Plaintiff contends that the merchandise was freely offered by the manufacturers on an ex-factory basis, and therefore the Japanese inland charges heretofore indicated are not dutiable, and are not a part of the export value of the merchandise.

Section 402(b) of the Tariff Act of 1930, as amended, provides:

"Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United

States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States."

The record in this case discloses that the merchandise was imported into the United States by B & W Wholesale Supply Co., Inc., Baltimore, Maryland, and that the importer subsequently changed its corporate name to Globemaster Midwest, Inc., the name of the plaintiff in this case. The record in the case of B & W Wholesale Co., Inc. v. United States, 63 Cust.Ct. 691, A.R.D. 262, affirmed, C.A.D. 1010, 436 F.2d 1399, 58 CCPA 92 (1971), was incorporated into the record of the case at bar.

In addition to the record of the incorporated case, the record in the case at bar consists of the testimony of one witness for the plaintiff and a number of exhibits.

■ In reappraisement litigation, when an export value appraisement is made on the basis of an ex-factory price plus certain inland charges and an alleged buying commission, if plaintiff claims that the ex-factory price is the proper export value, it must prove that the merchandise was freely offered to all on an ex-factory basis, and that the buying agency constituted a *bona fide* principal-agent relationship. B & W Wholesale Co., Inc. v. United States, C.A. D. 1010, 436 F.2d 1399, 58 CCPA 92 (1971); United States v. Pan American Import Corp., C.A.D. 993, 428 F.2d 848, 57 C.C.P.A. 134 (1970); United States v. Manhattan Novelty Corp., 63 Cust.Ct. 699, A.R.D. 263 (1969); Park Avenue Imports v. United States, 62 Cust.Ct. 1035, A.R.D. 255, 299 F.Supp. 528 (1969).

■■ If ex-factory prices and other charges are separately stated on the invoice, and the appraiser's finding of value is expressed in terms of the invoiced unit prices, plus the questioned charges, the appraisement is deemed to be separable.

United States v. Supreme Merchandise Company, 48 Cust.Ct. 714, A.R.D. 145 (1962); United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371 (1947). In a case where the appraisement is deemed separable, the charges may be disputed without the necessity of proving that the ex-factory prices comply with the statutory definition of export value. United States v. Dan Brechner, et al., 38 Cust.Ct. 719, A.R.D. 71 (1957). In such a case it is well established that the importer is relieved of the burden of proof as to ex-factory prices only after it is proven that similar merchandise was offered for sale to *all* purchasers on an ex-factory basis. These principles were recently restated by the Court of Customs and Patent Appeals in United States v. Pan American Import Corp., etc., C.A.D. 993, 428 F.2d 848, 57 CCPA 134 (1970).

In the case at bar, since the appraisement is separable, plaintiff need only prove the non-dutiable character of the disputed charges in order to overcome the presumptively correct appraisement returned by the appraiser. The presumption of correctness rests upon both statutory and judicial underpinnings and requires no reaffirmation. See 28 U.S.C. § 2635 (1971) and cases cited in Sanji Kobata et al. v. United States, 66 Cust.Ct. 341, C.D. 4213, 326 F.Supp. 1397 (1971). As a consequence of the presumption the appraiser is presumed to have found every fact necessary to support his action. Since the amounts of the disputed charges were added to the appraised values, it is presumed that the appraiser found that the buying commissions were not *bona fide*. Hub Floral Mfg. Co. v. United States, 60 Cust.Ct. 905, R.D. 11544 (1968). The issue, therefore, is whether plaintiff has established that they were, in fact, *bona fide* and thus not properly part of the export value of the merchandise. United States v. Nelson Bead Co., 42 CCPA 175, C.A.D. 590 (1955); Stocker & Yale, Inc. v. United States, 60 Cust.Ct. 881, R.D. 11533 (1968).

■ In a reappraisement case it is fundamental that whether a buying commission is *bona fide* depends on the facts

in each case, and that the burden of proof rests upon the plaintiff. See cases cited in Bushnell International, Inc. v. United States, 67 Cust.Ct. A.R.D. 297, 331 F. Supp. 1378, 1380–1381 (1971) appeal pending.

Mr. Edmund A. Perwien, president of B & W Wholesale Supply Co., Inc. (hereinafter called "B & W"), testified that the business of the company is the distribution of hand tools and related articles to retail stores. In October of 1961 he visited Japan for the purpose of buying merchandise. He stated that early in the visit to Japan he met with T. Chatani & Co. (hereinafter called "Chatani"), and appointed it as agent to make contact with various factories in Japan which would be interested in manufacturing articles for B & W. As a result of the meeting, B & W, and other related companies, entered into an agreement with Chatani dated November 1, 1961. The agreement provided that the Chatani company visit manufacturers, collect and submit samples, provide regular reports pertaining to the market, and quote prices. Upon instructions from the companies, Chatani was to place orders with manufacturers, inspect merchandise, and arrange shipment. Chatani was to receive a buying commission at the rate of 5 percent on first cost, ex-factory Japan. The agreement further provided:

"T. Chatani & Co., Ltd. will purchase merchandise on the basis of ex-factory price plus the additional charges totaling the final cost such as case and packing, inland freight to port of shipment, insurance to steamer, storage, hauling and lighterage, buying commission, etc.

"In order to avoid misunderstandings of price quotations when communicating, it is hereby agreed that T. Chatani & Co., Ltd. will quote above named companies, the cost of the merchandise in United States Dollars. The price quotations always show the price ex-factory at which the goods were purchased and the additional costs to get merchandise to port in Japan.

\*     \*     \*     \*     \*     \*

"The buying agent shall have no authority to bind above named companies, except upon receipt of written order or authorization of the said company."

Mr. Perwien testified that he visited Chatani's office in Japan. He also visited the manufacturers or makers and negotiated with them to attempt to reach a price for a quality of merchandise which would be acceptable to B & W. He stated that on the aforementioned trip to Japan, he was accompanied by Mr. Robert L. Bernstein, an officer and stockholder of B & W. While in Japan he visited trading houses other than Chatani, as well as several other agents, and obtained prices from the manufacturers on an ex-factory basis. He stated that he could have purchased the merchandise directly from the manufacturers at ex-factory prices without the intervention of T. Chatani, and that the selling prices of the merchandise were fixed by the manufacturer. Mr. Perwien also testified that there has never been any financial relationship between B & W and Chatani other than the latter acting as agent on a commission basis. He stated that Chatani was not at liberty to place orders on behalf of B & W with whomever it wished. The witness negotiated the price with the factory and, once an agreement was reached, the transaction was completed when B & W placed the order through Chatani. Chatani, however, was not authorized to place orders without B & W's instructions.

Plaintiff introduced into evidence an affidavit of Kenjiro Honda, assistant manager of T. Chatani & Co., Ltd., sworn to on October 29, 1969. Mr. Honda, in his affidavit, states that the business of the company, among other things, is to act as buying agent in Japan on behalf of importers in the United States; that since 1961 Chatani has acted as buying agent for B & W and other Globemaster affiliates; that the functions of Chatani, among other things, consisted of locating various manufacturers, obtaining samples, negotiating contracts, follow-

ing up of sales, and inspection of goods on behalf of Chatani's principals. The affiant also declared that he was familiar with the transaction "covered by invoice No. 0.3" relating to the importation at bar issued by Chatani under date of February 6, 1962 to B & W. Mr. Honda stated that in that transaction Chatani acted as buying agent for B & W and also negotiated prices with all of the manufacturers for which it charged a buying commission. Mr. Honda further recited that Chatani was not the actual purchaser because the goods all carried the "Globemaster" brand and were of no value to anyone except B & W or any other company affiliated with Globemaster, Inc. He further stated that B & W, or other Globemaster affiliates, had the option of buying at either ex-factory prices or godown prices; that Chatani never had any financial interest in the manufacturers of the goods or in B & W or any other Globemaster affiliates; that neither B & W nor Globemaster ever had any interest in Chatani but that the relationship has always been that of principal and agent. It was further stated that the selling prices of the goods were always fixed by the manufacturers and not by Chatani "as the makers were the owners of the goods at the time they were sold."

On the record before it, is the determination of the court that plaintiff's evidence is not of sufficient probative value to support its contention that B & W purchased through its agent, Chatani, on an ex-factory basis from the three manufacturers in question. Mr. Honda's affidavit, to the effect that Chatani acted as buying agent for B & W among others, is conclusory and is not substantiated by the record. It does not establish that Chatani, in obtaining the goods, was not the party intending to sell them to B & W ready for export to the United States on an f. o. b. point of shipment basis, at a fixed price. Furthermore, the statement of Mr. Honda to the effect that Chatani was not the actual purchaser of the goods because they all contained the Globemaster brand, indicates only that the goods were destined for Globemaster (B & W) and for no other importer or purchaser.

Plaintiff's witness Perwien, in his testimony, indicated that he negotiated prices with the manufacturers personally, and contracted with the manufacturers for the purchase of the goods before contracting with Chatani. On the other hand, Mr. Honda's affidavit states that Chatani negotiated prices with all the manufacturers. These two assertions are irreconcilable.

Mr. Perwien testified that there was an f. o. b. price arrived at in his negotiations with Chatani and stated that the order would be placed "through, in this case, our buying agent, T. Chatani." He also testified that after shipment he did not ask for a report of actual expenses, and that he "assumed" that Chatani would bear the risk if those expenses exceeded the negotiated expenses. The testimony of plaintiff's witness shows clearly that a fixed f. o. b. price was arrived at with Chatani for the merchandise in issue, and that Chatani then bore the risk if the total cost exceeded the agreed upon f. o. b. price. These elements do not permit a finding of an agency relationship between the plaintiff and Chatani. It is a basic principle of the law of agency that if the existence of an agency relationship is not clearly established, the legal relationship is not that of agency. See The Restatement (Second) of Agency § 14b (1958).

Additional factors may be cited which support a conclusion that Chatani was not the buying agent for the plaintiff. At the outset it is noted that Chatani is designated on the Special Customs Invoice as the seller of the merchandise. No manufacturers or other sellers are indicated thereon. On the reverse side of the Special Customs Invoice appears a "Purchase Declaration" or affirmation by S. Matsumoto, assistant manager of the shipping section of Chatani, which states that "the information contained herein is true and correct". Furthermore, the signer of the invoice distin-

guished between the terms "seller" and "shipper". This fact becomes apparent from an examination of the invoice for the word "seller" has been left in whereas the word "shipper" has been crossed out.

Plaintiff attempts to repudiate the capacity of Chatani as "seller" of the merchandise. Mr. Honda's explanation that there were various makers of the merchandise, and that it was more convenient for his company to make a single invoice for the whole shipment showing his company as seller, rather than to list the five makers, is not persuasive. It has not been established that Mr. Honda had any connection with the preparation of the invoice. Hence, his attempt to explain the matter in an affidavit more than eight years after the event is futile. Certainly Chatani, experienced in procuring merchandise for purchasers, must have known the capacity in which it acted in these transactions.

■ This court, in at least two cases, has passed upon a situation similar to that under consideration. In United States v. Manhattan Novelty Corp., 63 Cust.Ct. 699, 704, A.R.D. 263 (1969), the court stated:

"Where the official papers accompanying an entry unequivocally set out a relationship between two parties which is subsequently disclaimed by them, this court has looked askance at such later allegations in the absence of clear and convincing proof that the statements made at time of entry were erroneous."

Likewise, in Morris Friedman v. United States, 52 Cust.Ct. 660, 664, A.R.D. 178 (1964), the court declared:

"Such a repudiation of the capacity in which it is claimed that the commission was paid would justify a determination by an appraising officer that the commission was not, in fact, a *bona fide* buying commission * * *."

While the agreement between B & W and Chatani is stated to be a buying agency, Chatani, as heretofore indicated, declared itself to be the seller when enter-

ing this merchandise. An identical agreement was executed between B & W and another purported buying agent, M. Matsumoto, in the incorporated case of B & W Wholesale Co., Inc. v. United States, 63 Cust.Ct. 691, A.R.D. 262 (1969), but an agency relationship was found not to exist. Significant also is the statement by this court in the *Morris Friedman* case where, in a similar situation, it said:

"It will be observed that the position taken in these agreements by one of the parties, namely, the Hosho Corp., is directly opposite of the position which it subsequently took in its declarations on the consular invoices which accompanied the involved entries wherein the Hosho Corp. stated that it was the seller * * *. It does not appear of record whether the agreements * * were before the two appraisers at the port of entry who appraised the involved merchandise. *But, certainly, the consular invoices were before these appraising officers at the time of appraisement.*" [Emphasis added]. 52 Cust.Ct. at 664.

■■ The exercise of control by the principal over the conduct of an agent is the essence of an agency relationship. See The Restatement (Second) of Agency § 1, § 14b (1958). See also Dorf International, Inc., et al. v. United States, 61 Cust.Ct. 604, 610, A.R.D. 245 (1968). In the case at bar there is no evidence that B & W concerned itself with directing or controlling the activities of Chatani. The record discloses that after shipment of the merchandise in question, B & W did not ask Chatani for a report of actual expenses incurred in connection with the shipment of the involved goods. In fact, the record is silent as to whether B & W actually directed or controlled any of the activities of Chatani in connection with the merchandise in issue. On the contrary, it appears that B & W found it necessary to have a representative of Globemaster Japan, its affiliate, act in the capacity of buying agent in making inspections of the goods. Plaintiff's witness testified that while Globemaster's

representative and Chatani usually went together to inspect the merchandise, Globemaster Japan's representative "would have the final approval before it left Japan." These actions do not support plaintiff's contention that Chatani was acting as an agent under the direction and control of B & W. As stated by the Court of Customs and Patent Appeals in the case of Kurt Orban Company, Inc. v. United States, 52 CCPA 20, 22, C.A.D. 851 (1965):

"* * * it is necessary for us, as well as the Customs Court, to look not so much at the words used by non-lawyers as at the method of doing business which they describe and to determine, according to well-established principles, when, where and by whom sales were made and at what price."

Both in its opening and reply brief, appellant stresses the differences between the present case and the incorporated case of B & W Wholesale Co., Inc. v. United States, 63 Cust.Ct. 691, A.R.D. 262 affirmed, C.A.D. 1010, 436 F.2d 1399, 58 CCPA 92 (1971). It expressly admits, however, that the agreement between B & W and Matsumoto, the alleged buying agent in the incorporated case, "is similar to the agreement form used by B & W and Chatani." (Plaintiff's brief, p. 18) Appellant, nevertheless, argues that the incorporated case "is of no assistance in deciding this case." A reading of the opinion of Judge Richardson, who wrote for the appellate term of this court in the incorporated case, will show that much that is stated there would also apply to the case at bar. Judge Richardson's decision, which sustained the decision of the single judge sitting in reappraisement, was in turn affirmed by the Court of Customs and Patent Appeals. See summary of the *B & W Wholesale Co.* case in Bushnell International, Inc. v. United States, 67 Cust.Ct., A.R.D. 297, 331 F.Supp. 1378, 1381 (1971), appeal pending.

The circumstances in the case at bar parallel those in the incorporated case and require the conclusion that an agency relationship did not exist between Chatani and B & W. A study of the record will reveal that plaintiff has not overcome the appraiser's presumptively correct finding that Chatani was not a *bona fide* agent and that the inland charges were dutiable. The burden of proof was clearly upon the plaintiff, and plaintiff did not prove that Chatani was not an agent of the manufacturer nor a seller who sold on its own behalf.

In its reply brief plaintiff states that "[i]nstead of *proving* that the basis of sale for such merchandise to all purchasers was f. o. b. point of shipment, the defendant *assumes* that it was, based only upon the purported presumption attaching to the appraiser's actions." [Emphasis in original.] (Plaintiff's reply brief, p. 3) Citing Park Avenue Imports v. United States, 62 Cust.Ct. 1035, A.R.D. 255, 299 F.Supp. 528 (1969), and asserting that it has overcome the presumption of correctness, plaintiff adds that the "defendant cannot substitute assumptions for proof." The "proof" in the case is not as clear and consistent as indicated in plaintiff's briefs. Indeed, it is plaintiff that "assumes" that the evidence offered was sufficient to establish a *prima facie* case overcoming the presumption of correctness attaching to the appraised values. Plaintiff misplaces the burden of proof upon the defendant. See Kenneth Kittleson v. United States, 40 CCPA 85, C.A.D. 502 (1952). While it is true, as stated in the *Park Avenue Imports* case, that the importer is not bound "to prove its case to a moral certainty and beyond a reasonable doubt", it can not be questioned that it must prove its case by a "preponderance of credible evidence." 62 Cust.Ct. at 1043. See also H. & S. Originals v. United States, C.A.D. 972, 418 F. 2d 947, 57 CCPA 24, 30 (1969).

The presumption of correctness is not a "purported presumption", as contended by the plaintiff, but operates as a matter of law. See United States v. New York Merchandise Co., Inc., C.A.D. 1004, 435 F.2d 1315, 58 CCPA 53 (1970). To overcome the presumption of correctness, plaintiff has the burden to lay bare the

facts in such a manner as to dispel existing serious doubt as to the status of the parties. This the plaintiff has failed to do. The inconsistent statements made by Mr. Honda and plaintiff's witness, Perwien, that each negotiated the prices with the manufacturers, do not permit a finding that the plaintiff purchased the merchandise from the manufacturers or that Chatani was not the seller of the imported goods. The preponderance of the evidence establishes that there was no agency relationship between B & W and Chatani as to the merchandise in issue. Rather, the record establishes that Chatani was acting as seller pursuant to its agreement with B & W to deliver the goods at a fixed f. o. b. point of shipment price.

The fact that a buying commission was properly deductible in the sale of the jewelers' screw drivers and artists' paint brushes lends no support to plaintiff's claim with respect to the merchandise in issue. It only demonstrates that the appraisement was made upon careful consideration, and that the appraising official, after examining all the facts, concluded that Chatani acted as a *bona fide* agent as to certain items, but that it acted as seller with respect to other merchandise. The plaintiff in this case has not overcome the presumption of correctness attaching to the appraiser's finding that Chatani was not a *bona fide* agent.

With respect to the disputed inland charges, the record does not support plaintiff's claim that similar merchandise was offered for sale to *all* purchasers on an ex-factory basis and that therefore the charges are non-dutiable. Here again plaintiff has failed to overcome the presumption of correctness attaching to the appraiser's finding that the inland charges were properly part of the export value of the merchandise.

On the present record, therefore, the court makes the following findings of fact:

1. That the merchandise in question consists of socket sets, nail pullers, circle cutters, drill chuck adaptors, and corner clamps exported from Japan on or about February 6, 1962.

2. That the merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit values, plus certain charges marked "X", that is, a 5 percent alleged buying commission, inland freight from factory to Kobe port, insurance premium from godown to on board, storages, hauling and lighterages.

3. That the plaintiff has failed to establish that there was a *bona fide* agency relationship between Chatani and the importer.

4. That plaintiff has failed to establish that the merchandise was freely offered to all purchasers ex-factory.

5. That plaintiff has failed to establish that B & W Wholesale Supply Co., Inc. purchased the merchandise at an ex-factory price exclusive of inland charges.

The court therefore, concludes as a matter of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for appraisement of the merchandise here involved.

2. That the presumption of correctness attaching to the appraiser's return of value for the merchandise in question has not been overcome.

3. That the export value for the merchandise herein is represented by the appraised values.

Judgment will be entered accordingly.