**ARTMARK CHICAGO, LTD., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 76–32.**

United States Court of Customs and Patent Appeals.

June 23, 1977.

Schwartz & Lidstrom, Chicago, Ill., attorneys of record, for appellant; Thomas J. O'Donnell, Donald J. Unger, Chicago, Ill., of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Chief, Customs Section, Saul Davis, New York City, for the United States.

LANE, Judge.

This is an appeal from the judgment of the United States Customs Court in *Artmark Chicago, Ltd. v. United States,* 76 Cust.Ct. 187, C.D. 4654, 417 F.Supp. 1030 (1976), overruling appellant's (Artmark's) protest against the classification of certain imported plastic horses. We affirm.

The imported merchandise consists of plastic horse figures approximately ten inches high with removable plastic saddles and metal reins.

The collector classified the horses under item 737.40 of the Tariff Schedules of the United States (TSUS), as modified by Presidential Proclamation 3822, T.D. 68-9, and assessed the applicable duty rate of 17.5% ad valorem. That provision and its pertinent headnotes read:

SCHEDULE 7.—SPECIFIED PRODUCTS;

MISCELLANEOUS AND NON-ENUMERATED PRODUCTS

\* \* \* \* \* \* \*

Part 5.—Arms and Ammunition; Fishing Tackle; Wheel Goods; Sporting Goods, Games and Toys

\* \* \* \* \* \* \*

Subpart E.—Models; Dolls, Toys, Tricks, Party Favors

Subpart E headnotes:

1. The article described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, . . ..

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

\* \* \* \* \* \* \*

Toy figures of animate objects (except dolls): Not having a spring mechanism:

\* \* \* \* \* \* \*

Not stuffed:

\* \* \* \* \* \* \*

737.40 other ................ 17.5% ad val.

Artmark's contention, not reached by the Customs Court, was that the horses were properly dutiable under item 773.10:

Part 12.—Rubber and Plastics Products

Subpart C.—Specified Rubber and Plastics Products

\* \* \* \* \* \* \*

773.10 Plaques and figurines, of rubber or plastics ....... 8.5% ad val.

Another pertinent provision of the TSUS is:

GENERAL HEADNOTES AND RULES OF INTERPRETATION

\* \* \* \* \* \* \*

10. *General interpretative rules.*— For the purposes of these schedules—

\* \* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

\* \* \* \* \* \* \*

Relying, in part, on certain language of this court's opinion in *S. Y. Rhee Importers v. United States,* C.A.D. 1108, 486 F.2d 1385, 61 CCPA 2 (1973), the Customs Court found Artmark's evidence of the merchandising channels and methods through which the horses are sold to be inconclusive on the question of chief use. Noting that Artmark's witnesses, for the most part, had not observed use of the horses by their ultimate purchasers, the court sustained the presumptively correct classification. 28 U.S.C. § 2635.

On appeal Artmark urges, in substance, that the judgment below is against the weight of the evidence, which, it is argued, proves that the imported horses are chiefly used as items of decoration, ornamentation, or display. The Government asserts that the weight of the evidence clearly supports the judgment.[1]

## OPINION

■ The issue decided by the Customs Court "boils down to whether or not the chief purpose of the objects at the time of importation was 'amusement.'" *United States v. Topps Chewing Gum, Inc.,* C.A.D. 1022, 440 F.2d 1384, 1385, 58 CCPA 157, 158 (1971). Chief use is a question of fact. *L. Tobert Co. v. United States,* 41 CCPA 161, 164, C.A.D. 544 (1953). That factual question having been decided in the affirmative, our inquiry is limited to whether the finding is without evidence to support it or is clearly contrary to the weight of the evidence. *Western Stamping Corp. v. United States,* C.A.D. 968, 417 F.2d 316, 57 CCPA 6 (1969); *United States v. Baltimore & Ohio R.R.,* 47 CCPA 1, C.A.D. 719 (1959).

■ We agree with the Customs Court that the evidence presented by Artmark falls short of establishing a prima facie case. Use of the imported article in the hands of the ultimate recipient is the decisive point of emphasis in determining chief use. *S. Y. Rhee Importers v. United States,* supra, 486 F.2d at 1387, 61 CCPA at 5.

■ The testimony of Artmark's three merchant witnesses did not establish the ultimate use of the horses since none of the three had actually observed plastic horses of the imported class being used by the ultimate consumer during 1971 or 1972. The only basis for their opinions that the horses were primarily used as decorative articles was *what customers had told them.* While those opinions may have been admissible, they were not entitled to a great deal of weight and the court properly treated them as such. Fed.R.Evid. 701, 702.

■ Artmark relies on three decisions to support the proposition that the testimony of merchants and importers is entitled to great probative value; *United States v. Baltimore & Ohio R.R.,* supra; *Kubie & Co. v. United States,* 12 Cust.Ct.App. 468, T.D. 40668 (1925), and *Klipstein v. United States,* 1 Cust.Ct.App. 122, T.D. 31120 (1910). While this proposition was correct on the facts of each of those cases, it does not assist Artmark to overcome the presumption of correctness here. *Klipstein* and *Kubie* both involved testimony by merchants or importers based on their *knowledge* of the use of the imported articles, rather than on what customers had told them. See *Kubie & Co. v. United States,* supra, 12 Cust.Ct.App. at 469, and *Klipstein v. United States,* supra, 1 Cust.Ct.App. at 123. In both cases, the Government presented no rebuttal witnesses to contradict or impeach the testimony of the importers. Under those circumstances the importers' testimony was given substantial probative value.

In the *Baltimore & Ohio R.R.* case, the issue was whether a particular type of imported cups and saucers was chiefly used

---

1. Artmark also relies on language in a Protest Review Decision involving similar merchandise as an admission by the Government of the primarily decorative nature of this type plastic horse. Since that decision was not made a part of the record below, and is not mentioned in the Customs Court's opinion, we have not considered it.

for serving liquids or for display. The key evidence was provided by the importer's vice president, who testified that a fad of collecting "after-dinner cups and saucers" for ornamental purposes had developed in this country and that his company had endeavored to take full advantage of that source of business. The basis of that testimony was an investigation undertaken by his company which confirmed the existence of the fad and the witness' *own* perception of the fad. *Baltimore & Ohio R.R.,* supra, 47 CCPA at 4. That testimony was probative and it was, again, *unrebutted.*

■ Here, the Government presented substantial rebuttal testimony based on personal observations of actual use during 1971 and 1972 and testimony of the advertising, marketing, and sales of the same kind of horses in toy stores and toy departments during that period. All of this evidence buttresses the presumption of correctness even further and leaves us with no doubt that the lower court was correct.

■ We do not reach the question, raised by the Government, of whether collecting horses such as these for display or decoration is itself a form of amusement sufficient to classify the articles as toys within the TSUS definition.[2] We are satisfied that there is sufficient evidence on this record to support the decision. Since the Customs Court also had the benefit of observing the demeanor of the witnesses, we are even more unwilling to disturb its decision, based largely on testimonial evidence.

Accordingly, in view of the reasons expressed above, the judgment of the Customs Court is *affirmed.* .

2. The Government argues that these articles could be classified as toys based on a perceived Congressional intent to abolish a legal distinction between play toys and decorative toys. See *Tariff Classification Study, Schedule 7,* at 289–90 (1960). We would only note that the chief use of the object must be to give the same kind of enjoyment one would derive from objects commonly thought of as toys. *United States v. Topps Chewing Gum, Inc.,* supra. An article of real or permanent value used for decoration or display may very well not be a toy.