PISTORINO & CO., INC., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 79–14.

United States Court of Customs and Patent Appeals.

Oct. 11, 1979.

---

990

Walter E. Doherty, Jr., argued, Doherty & Melahn, Boston, Mass., atty. of record, for appellant.

Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Branch Director, Joseph I. Liebman, Susan C. Cassell, argued, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and WATSON, Judge.*

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 463 F.Supp. 1311, 81 Cust.Ct. 131, C.D. 4779 (1978), dismissing appellant-importer's protest to the classification of imported beam cutting machines under the basket provision for machines rather than as machines for use in shoe manufacturing. We affirm.

*Judge James Watson, of the United States Customs Court, sitting by designation.

### The Imported Merchandise

The imported merchandise consists of beam cutting machines and parts manufactured by "Fipi" and "Atom" of Italy, imported from 1972 to 1974 and entered at the port of Boston, Massachusetts, for the account of Hudson Shoe Machinery Company. The different models at issue in this consolidated action are invoiced as Models F59, F63, F79S, and G888. All are electrohydraulic beam cutting machines or beam presses. A beam cutting machine consists of a structural member, called a trolley or cutting beam, which holds a hydraulically driven head positioned over a cutting bed. In operation, the material to be cut, such as felt, fabric, waxed paper, metal foils, and similar material, is placed on the cutting bed, and the trolley or cutting beam is positioned over a die placed on top of the material. The head is then caused to strike the die after which it returns to its up position to enable the operator to remove the cut material or reposition the die.

Beam cutting machines vary in bed size and maximum cutting pressure. The imported machines have a cutting bed ranging in size from 16 by 59 inches to 30 by 79 inches and a maximum cutting pressure of from 20 to 25 tons. Other beam cutters can have larger bed capacity and/or higher cutting pressures than do the imported machines.

### Statutory Provisions

The imported merchandise was classified upon liquidation under TSUS item 678.50 as modified by T.D. 68–9; appellant claims that classification is proper under TSUS item 678.10. The relevant provisions read as follows:

Schedule 6, Part 4, Subpart H.—Other Machines

\* \* \* \* \* \* \*

678.10 Shoe machinery and parts thereof .. Free

\* \* \* \* \* \* \*

678.50 Machines not specially provided for, and parts thereof . . . . . . . . . . . . . . 5% ad val.

In addition, both parties recognize the controlling relevancy of TSUS General Interpretative Headnote 10(e)(i):

General Headnotes and Rules of Interpretation

\* \* \* \* \* \* \*

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

\* \* \* \* \* \* \*

### Customs Court

The Customs Court examined the testimony and evidence in light of the criteria set forth in *United States v. Carborundum Co.*, 536 F.2d 373, 377, 63 CCPA 98, 102, C.A.D. 1172 (1976). The court found that the physical characteristics of the imported machines did not set them apart from other beam cutting machines; that the expectations of the ultimate purchasers were such that the importations were not distinguishable from other beam cutters; that the imported merchandise moved in the same trade channels as did the general purpose cutters; that the imported merchandise was used in the same manner as other merchandise which defines the class, and that it was economically practical to use the imported machines in the same manner as those machines which define the class; and that the imported merchandise was advertised and displayed in a manner which held it out to be for use in general purpose cutting applications.

The court held that although appellant had shown that approximately 80% of the imported beam cutters were in use in the shoe industry, proof was lacking that the imported machines were of a different class or kind than the domestic beam cutters identified and described in the testimony of witnesses with experience in the industry.

Absent such proof, the court deemed the imported beam cutters to be of the same class or kind as the general purpose cutters. The court distinguished the case of *C. H. Powell Co. v. United States*, 63 Cust.Ct. 302, C.D. 3912 (1969), relied on by appellant for the proposition that there is a class or kind of beam cutters used chiefly as shoe machinery, by noting that the evidence before it showed that the nature of the industries to which beam cutters are sold has changed within the last ten years, and that in this case the witnesses' testimony indicated that such cutters were in use in other industries. In *C. H. Powell*, supra, there was no such testimony; the defense witness was unable to recall if he had ever seen a beam cutter in operation.

### OPINION

The dispute in this case centers on the issue of whether appellant-importer has shown, in accordance with General Interpretative Rule 10(e)(i), that the imported beam cutting machines belong to an identifiable class or kind of beam cutting machinery different from the class or kind of machinery to which belong the other, general purpose beam cutters.

 Where we are called upon to review factual determinations made by the Customs Court, the standard of review is whether the finding is without substantial evidence to support it or is clearly contrary to the weight of the evidence. *Cascade Corp. v. United States*, 595 F.2d 25, 30, 66 CCPA ——, ——, C.A.D. 1219 (1979). The question of chief use is a question of fact and is thus subject to this standard of review. *Artmark Chicago Ltd. v. United States*, 558 F.2d 600, 602, 64 CCPA 116, 119 C.A.D. 1192 (1977).

 We are in agreement with the decision of the Customs Court. The court heard all of the testimony of the witnesses for both sides and was in a much better position than we are to evaluate the credibility of the testimony. But even our own examination of the testimony and exhibits leads us to the same conclusion made by the

Customs Court. Its decision is based on the weight of the evidence and is adequately supported by the evidence, which fails to distinguish appellant's imported beam cutting machines from the other beam cutting machines used in other industries.

As the Customs Court noted, it is the chief use of the class or kind of merchandise, not the imported merchandise, which must be proven. *United States v. Colibri Lighters*, 47 CCPA 106, 109, C.A.D. 739 (1960). Appellant's evidence was inadequate on this point; it consisted mainly of evidence of the use of the imported machines.

Appellant attempted to distinguish its importations from other beam cutting machines on the basis of the differing size of the cutting bed and the 20- to 25-ton cutting pressure limit of the hydraulic head.

Also cited were the length of the cutting stroke, the die size, and the speed of the travelling head. However, the witnesses for the Government, without exception, testified that the imported machines were competitive with the machines which appellant was attempting to distinguish, and that the imported machines and the other machines could be used side by side and could be used as replacements for one another in many applications.

For the above reasons, the judgment of the Customs Court is *affirmed*.