**E.R. HAWTHORNE & CO., INC., A/C Veped Traffic Controls, Inc., Appellee,**

v.

**The UNITED STATES, Appellant.**

No. 83–1379.

United States Court of Appeals, Federal Circuit.

March 28, 1984.

Deborah E. Rand, New York City, for appellant; With her J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Washington, D.C., Attorney in Charge International Trade Field Office, on brief.

John S. Rode, New York City, for appellee; R. Brian Burke, New York City, on brief.

Before BALDWIN, Circuit Judge, NICHOLS, Senior Circuit Judge, and KASHIWA, Circuit Judge.

NICHOLS, Senior Circuit Judge.

*Statement of the Case*

This case involves the proper tariff classification of tapered or conical steel poles 20 to 39 feet long and chiefly used after finishing to support street or highway or other outdoor lights. The District Director of Customs at Houston, Texas, classified them as "Illuminating Articles and parts thereof, of base metal, Other * * *," Tariff Schedules of the United States (TSUS), Item 653.39, at 17.6% ad valorem. By virtue of 28 U.S.C. § 2639(a)(1), this classification is presumed to be correct and the burden of proving otherwise rests upon the party challenging the decision. The Court of International Trade (CIT) sustained the importer's protest, holding that the proper classification was "Pipes and tubes and blanks therefor * * * steel," TSUS Item 610.32, at .03¢ per pound, 572 F.Supp. 1279 (Ct. Int'l Trade 1983). The importer claims other classifications as alternatives, but we need not consider them. We hold that it failed to sustain its burden of showing that the district director's classification was incorrect. The CIT decision was therefore erroneous as a matter of law and cannot be sustained.

The competing classifications are more fully set out in that decision with a fuller description of the merchandise and how it is produced. It is only necessary to add here the fact the CIT relied on, namely, that the imported merchandise receives further processing and advancement in the United States before it can be incorporated as a finished part into the complete lighting fixture as installed. A base plate is often welded on the bottom of the pole after importation, clamps to support a mast arm are welded at the top, the pole is, if necessary, cut at the top to the exact length specified, the ends are squared, provision is made at times for a handhole ring to be

made and attached for connection of the wires, the pole is painted or galvanized, and, if necessary, a transformer base is attached. About half the cost and one-third of the time required for a complete finished part is thereby incurred after importation; however, the pole as imported is in its shape and dimensions made to conform to the user's specifications and drawings and would not be accepted by anyone else. There is no dispute in the evidence that subject to random other uses, articles of the class or kind of those imported have a use as stated above exceeding all other uses and if chief use controls the tariff classification, by General Headnote 10(e), chief use is as unfinished parts of lighting fixtures.

Various other relevant headnote provisions of TSUS remain to be noticed.

By General Headnote 10(c) an imported article "described in two or more provisions of the schedule," is classifiable in the provision which most specifically describes it.

By General Headnote 10(h) a tariff description of an article covers the article "whether finished or not finished."

By General Headnote 10(ij)—

A provision for "parts" of an article covers a product wholly or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

However, Item 610.32, the classification of the imported items as held by the CIT, falls within Part 2 of Schedule 6 of the TSUS, and a headnote applicable to items in that part provides—

1.  * * * This part does not include

    *    *    *    *    *    *

(iv) Other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

## Opinion

Looking at the issue on the basis of the headnotes, apart from the case law, the correctness of the district director's choice of classification seems manifest. The headnote to Part 2 of Schedule 6, the last cited above, and which the CIT judge never mentions, conflicts with the last part of General Headnote 10(ij) and prevails, because it is more specific, dealing with respect to items only in Part 2, of which Item 610.32 is one. Parts of illuminating articles are themselves classed as illuminating articles by virtue of an express provision, 653.39 TSUS. (The reader will have to be patient with the two distinct meanings of the word "Part;" that are inherent in the TSUS and makes a little extra concentration necessary on—heaven forgive us!—the reader's part.)

The trial court, by ignoring the headnote to Part 2 of Schedule 6, concluded the merchandise could not be classified as a part, because it was otherwise specifically provided for in the tariff schedule—an application of the Headnote 10(ij) "specificity test." The effect of Headnote 1(iv) of Part 2, Schedule 6, is to render the Headnote 10(ij) "specificity test" inapplicable to Schedule 6, Part 2. The result is that since the items in issue are parts of illuminating articles, they must be classified as such, even if they are tubes or pipes. The poles are not excluded from the category of "parts" because of being unfinished, since by General Headnote 10(h) they are covered as unfinished articles, provided they are chiefly used as parts as is the case here.

Under the TSUS, applicability of a "parts" classification is controlled by chief use, not actual use. *United States v. John V. Carr & Son, Inc.*, 495 F.2d 771, 61 CCPA 41 (1974). However, the CIT judge held that an unfinished part was not a part for tariff purposes until so far advanced that it was exclusively dedicated to use as a part, *i.e.*, was a finished part. This conflicts with the first portion of General Headnote 10(c) which allows a product chiefly used as a part to be treated as a part. Obviously, if it has other uses, even if only random, it cannot be exclusively dedicated. The CIT judge seems further to require that to be a part an article must be finished, contrary to General Headnote 10(h), *supra*.

The CIT judge relies on a fairly recent decision by one of our predecessor courts

interpreting the TSUS: *Avins Industrial Products Co. v. United States*, 515 F.2d 782, 62 CCPA 83 (1975), but the reliance is mistaken. In the first place, that decision and the one below, there reviewed, both affirm the district director and, therefore, in that case the CCPA decision needed only to support the presumption of correctness of the customs decision instead of overriding it. The competing provisions were stainless steel wire, Item 609.45, the customs service classification which was sustained, and Item 685.25, as it then was, parts of radio reception antennae. The opinion holds that as parts, the wires were unfinished, as stipulated, and that an unfinished part must be exclusively dedicated to the article of which it is to be a part, whereas these wires had other possible uses. All the evidence, however, was stipulated, and a reading of the stipulation in the decision below shows that it had nothing to say about chief use. In that case, therefore, the importer relied upon use of the actual imported articles themselves, not on chief use of all articles of the same class or kind. The *Avins* court below cited and relied upon other cases involving actual use and not chief use of unfinished articles; *Finn Bros., Inc. v. United States*, 454 F.2d 1404, 59 CCPA 72 (1972) and *F.W. Myers & Co. v. United States*, 425 F.2d 781, 57 CCPA 87 (1970).

According to Sturm, *Customs Law and Administration* (3d ed. 1983) § 54.9 at 42, the law before the existence of TSUS was well settled that to be classed as a part of another article, merchandise had to be "dedicated," *i.e.*, exclusively dedicated, for use with the other article. The meaning and intent of the TSUS was, she says, to broaden this, subject to the normal rule that an *eo nomine* designation (except in Schedule 6, Part 2) takes precedence over a designation as a part. Since in this case the normal rule does not apply because of the exception stated in the cited headnote to Schedule 6, Part 2, if the import is chiefly used as a part, it does not have to be wholly so used (*i.e.*) "dedicated." The CIT judge's authority for not observing the presumption of correctness of the customs determination therefore fails. Exclusive dedication remains important in cases, such as *Avins*, where chief use cannot be established.

In *United States v. Servco Co.*, 477 F.2d 579, 60 CCPA 137 (1973), a TSUS case, one of our predecessor courts held that the Customs Service erred in classifying certain alloy steel products, "drill collars," as "other tubes," Item 610.52, and should have classed them as parts (unfinished) of boring and extracting machinery, then Item 664.05. The parties have some difficulty applying this decision as a precedent as it is stated to be "limited to its own facts," at 581, but it does appear to be inconsistent with the trial court's notion that *no* further processing is allowable after importation to make a part. The *Servco* opinion, whatever else it does, expressly rejects an argument there made on behalf of the government, that Schedule 6, Part 2, Headnote 1(iv), is not a tariff description of an article such as to come under General Headnote 10(h), bracketing together for common tariff treatment finished and unfinished articles.

Both propositions the Customs Service relied on here are apparently supported by the literal language of TSUS and by case authority: *i.e.*, that chief use is the test, not exclusive dedication, to make a "part," and that the tariff treatment of an unfinished part is the same as that accorded to a finished part, other things being equal.

The CIT judge's statement that chief use cannot be ascertained is not a finding of fact—the evidence was all to the contrary—but a legal conclusion that the chief use test is to be applied, not to the unfinished article as imported, but to some other hypothetical article to be produced from it, which would be a part not unfinished, but finished.

### Conclusion

Accordingly, the decision of the Court of International Trade is reversed.

REVERSED