STANDARD COMMODITIES IMPORT & EXPORT CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 77–12–04812

MEMORANDUM OPINION AND ORDER

(Dated April 21, 1988)

*Stein Shostak Shostak & O'Hara (Robert Glenn White),* for plaintiff.

*John R. Bolton,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Michael P. Maxwell),* for defendant.

Re, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of certain steel products imported from Brazil in 1976, and described on the customs invoices as "tubes."

The imported merchandise was classified by the Customs Service under item 610.32, Tariff Schedules of the United States (TSUS), as steel "tubes" * * * [w]elded, jointed, or seamed, with walls not thinner than 0.065 inch, and of circular cross section * * * 0.375 inch or more in outside diameter." Consequently, the merchandise was assessed with duty at a rate of 0.3 cents per pound.

Plaintiff protests this classification, and contends that the imported merchandise should properly be classified as "[v]ehicles (including trailers), not self-propelled, not specially provided for, and parts thereof" under item A692.60, TSUS. If properly classifiable under item A692.60, TSUS, as maintained by plaintiff, the merchandise would be entitled to duty-free treatment under the Generalized System of Preferences.

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified under:*

Schedule 6, Part 2, Subpart B:

Pipes and tubes and blanks therefor, all the foregoing of iron (except cast iron) or steel:

> Welded, jointed, or seamed, with walls not thinner than 0.065 inch, and of circular cross section:

> Other than alloy iron and steel:

\*        \*        \*        \*        \*        \*        \*

610.32        0.375 inch or more in outside diameter ...        0.3¢ per lb.

*Claimed under:*

Schedule 6, Part 6, Subpart B:

A692.60        Vehicles (including trailers), not self-propelled, not specially provided for, and parts thereof .........................        [duty-free]

The question presented is whether the imported merchandise has been properly classified by Customs as steel tubes under item 610.32, TSUS, with duty at a rate of 0.3 cents per pound, or whether it is properly classifiable as parts of vehicles, not self-propelled, not

specially provided for, under item A692.60, TSUS, and therefore entitled to duty-free treatment, as contended by plaintiff.

In order to decide the question presented, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984). Pursuant to 28 U.S.C. § 2639(a)(1), the government's classification is presumed to be correct and the burden of proof is upon the party challenging the decision. *See Jarvis Clark Co.,* 733 F.2d at 876.

After an examination of the merchandise, the exhibits, the testimony of record, the tariff schedules, and the relevant case law, it is the determination of the court that plaintiff has not overcome the presumption of correctness, and that the imported merchandise was properly classified as "tubes" under item 610.32, TSUS.

It is undisputed that the imported merchandise is made of steel, and is tubular in shape. The articles were ordered and manufactured pursuant to the specifications of plaintiff's customers, to be used ultimately as axles for various types of trailers, for agricultural uses, and for use in mobile homes. The articles were ordered in four lengths, ranging from 7 feet 1¾ inches to 9 feet 3¾ inches. The ends of the articles were square-cut, beveled, and reamed. They were purchased according to an American Society of Testing Materials (ASTM) standard for mechanical tubing, refereed to as ASTM A513, and therefore, fall within the dimensional requirements of item 610.32, TSUS.

The headnote applicable to item 610.32, TSUS, headnote 1(iv) of Schedule 6, Part 2, however, provides that Part 2 does not include "other articles specially provided for elsewhere in the tariff schedules, or parts of articles." Hence, the court must determine whether the merchandise is specially provided for under item A692.60, TSUS, as parts of not self-propelled vehicles.

Plaintiff contends that the imported articles are properly classifiable as parts of not self-propelled vehicles, under item A692.60, TSUS. It asserts that since the tubular articles are cut to specified lengths and the ends of the tubes are finished, it is commercially impractical to use them for purposes other than as parts of not self-propelled vehicles.

Defendant contends that the merchandise was not chiefly used as parts of not self-propelled vehicles, and was suitable for a variety of uses. In addition, the defendant contends that if the court concludes that the imported merchandise has been advanced to the condition of parts, it would not be classifiable under the provision for not self-propelled vehicles, as urged by plaintiff, because the merchandise is used primarily in mobile homes which should not be classified as not self-propelled vehicles under the tariff schedules.

The action was previously before the court on a motion by plaintiff for summary judgment. *See Standard Commodities Import & Export Corp.* v. *United States,* 9 CIT 609 (1985). Since there was a fundamental disagreement between the parties as to "whether the imported tubes are standard tubes suitable for many purposes, or whether they are specially manufactured tubes, whose only practical use is as axles on not self-propelled vehicles," the court denied the motion for summary judgment. *Standard Commodities,* 9 CIT at 612–13.

General Interpretive Rule 10(ij) states that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." As noted by the court in *Standard Commodities,* "[t]he chief use of a product is defined as the use that exceeds all other uses combined. *See* General Interpretive Rule 10(e)(i). The actual use of any particular shipment of imported merchandise is not dispositive of its proper classification." *Standard Commodities,* 9 CIT at 612; *see Amorient Petroleum Co.* v. *United States,* 9 CIT 197, 201, 607 F. Supp. 1484, 1487 (1985). The court explained that "it is the chief use of the class or kind of merchandise in question that determines its proper classification under a chief use provision of the tariff schedules." *Standard Commodities,* 9 CIT at 612; *see Pistorino & Co.* v. *United States,* 67 CCPA 1, 4, C.A.D. 1234, 607 F.2d 989, 992 (1979).

Several relevant factors have been noted in determining the class or kind of merchandise in question. The pertinent factors are:

> the general physical characteristics of the merchandise, the expectation of the ultimate purchasers, the channels, class or kind of trade in which the merchandise moves, * * * the environment of the sale (i.e., accompanying accessories and the manner in which the merchandise is advertised and displayed), * * * the use, if any, in the same manner as merchandise which defines the class, the economic practicality of so using the import, [and] the recognition in the trade of this use.

*United States* v. *Carborundum Co.,* 63 CCPA 98, 102, C.A.D. 1172, 536 F.2d 373, 377 (citations omitted), *cert. denied,* 429 U.S. 979 (1976).

The first *Carborundum* factor is "the general physical characteristics" of the imported merchandise which were not shown to be significantly different from those of general purpose mechanical tubing designated as ASTM A513. According to the plaintiff, since the articles are cut to a specific length and have a specific end finish, they are articles for not self-propelled vehicles rather than tubing. In support of its position plaintiff offered the testimony of two witnesses who were its employees at the time the merchandise was imported.

Mr. David H. Taylor, president and founder of Standard Commodities Import & Export Corporation (Standard Commodities), testified that the imported merchandise was individually ordered for each customer based on the customer's specific requirements. Mr. Taylor explained that the items were designed to be attached to a chassis as axles to be used in not self-propelled trailers and in mobile homes. The nature of the width, length, wall thickness, and outside dimension, according to Mr. Taylor, was determined primarily by the user.

Plaintiff's second witness, Mr. William Spoliansky, was the director of marketing and sales for Standard Commodities, and has an engineering degree from the University of Argentina. Mr. Spoliansky testified that the merchandise was specially made in accordance with the clients' drawings and specifications. He testified that the merchandise was manufactured into axles which could then be used in "a mobile home, or a travel trailer, or horse trailer, or utility trailer, boat trailer, and there's a lot of different designations." According to Mr. Spoliansky the principal reasons for concluding that the merchandise was not "tubes" was because of the length to which it was cut, the manner in which the ends were finished, and its uses. Mr. Spoliansky emphasized that the cutting of the items to a specific length was the important process that changed the tubing to something else.

In support of the classification by Customs and in opposition to plaintiff's argument, defendant offered the testimony of Mr. Louis Lazzari, a manager of technical services of Quanex II Group, a part of Quanex Corporation (Quanex). Quanex produces various types of tube products. Mr. Lazzari, who has a degree in metallurgical engineering and worked as a metallurgist for 22 years, testified as an expert witness on tube manufacturing, production, and sales.

Mr. Lazzari testified that from an examination of the commercial invoices and specification sheets for the imported merchandise, it would be described as "mechanical tubing." He also testified that the imported merchandise fell within the dimensions of ASTM A513 tubing, which was a generalized specification for tubing production. He stated that there is no single end use to which the merchandise would be dedicated.

Mr. Lazzari testified that the specific length and end-finishing of the merchandise did not limit the use of the merchandise as axles, but rather, that "mechanical tubing is, for the most part, tailor-made, to fit a certain set of requirements." Mr. Lazzari explained that mechanical tubing by definition is custom-made. He stated that, although there would not be as wide a variety of end uses for the imported tubing as for tubing with just a square-cut end, the end-finishing is fairly common, and would not render the material unsuitable for a variety of uses.

According to Mr. Lazzari, the merchandise could be used as conveyor rolls, as drive tubing, for torque-type tubing, in structural members, and for agricultural equipment. He added that it could also be used to convey oils or lubricants, as a wiring conduit, and could be cut into smaller lengths for various other uses.

To classify the merchandise as axles or parts of not self-propelled vehicles, it must be shown that the steel tubing is so processed as to exclude a large portion of its potential uses. *See, e.g., B.A. McKenzie & Co.* v. *United States,* 47 CCPA 42, 45, C.A.D. 726 (1959). Although, plaintiff argues that the physical characteristics of the imported merchandise are unique to axles, the evidence does not establish that the merchandise is distinct from ASTM A513 mechanical tubing and that it may not be used for a large portion of the potential uses of tubing.

From the testimony at trial, it is clear that the "expectation of the ultimate purchasers" of the merchandise was to purchase "tubing," to be used in the manufacture of axles. Plaintiff's witness, Mr. Taylor, testified that the articles were purchased by its customers to be processed into axles which were attached to the chassis of a trailer. The trailers could be used for hauling boats, animals, or for agricultural purposes. He testified that the merchandise was also used on mobile homes. Mr. Taylor testified, however, that his company had not attempted to sell the ASTM A513 tubing for purposes other than as axles.

The "channels, class or kind of trade in which the merchandise moves," and the "environment" of the sales indicate that the merchandise fits the general category of mechanical tubing. It is pertinent that the merchandise, although tailored to certain specifications, was manufactured by Persico Pizzoniglio S.A. (Persico), and Fornasa, S.A. (Fornasa), which are tubing mills whose only business is the production and sale of tubes.

In advertising its tubing to potential customers, Persico describes the applications of its ASTM A513 equivalent tubing as "general industrial purposes where precision is required such as: automotive industry, motorcycles, bicycles, electric home appliances, shock absorbers * * *." Plaintiff's witness, Mr. Taylor, testified that the specification ASTM A513 is a standard generic term for mechanical tubing which covers a type of tubing falling within a range of structural strengths which could be utilized in various end uses. He stated that Standard Commodities used this specification to ease the ordering process with suppliers.

Mr. Taylor agreed with the defendant's contention that the Steel Customer Communications System for Steel Mechanical Tubing specifically states that steel tubing should be ordered with specific degrees of beveling and in specific lengths. He also acknowledged that the commercial invoices and purchase orders of Standard Commodities described the imported merchandise as "tubes."

The defendant submits that admissions by plaintiff's witness that the relevant documents, purchase orders, and commercial invoices of Standard Commodities referred to the imported merchandise as tubes or tubing, and not as axles, cannot be disclaimed absent clear and convincing proof. *See, e.g., Globemaster Midwest, Inc.* v. *United States,* 67 Cust. Ct. 539, 545, 337 F. Supp. 465, 469 (1971). While statements in invoices may be admissions against interest, they do not preclude the parties from showing the true character of the merchandise. *Amersham Corp.* v. *United States,* 5 CIT 49, 61, 564 F. Supp. 813, 820 (1983), *aff'd,* 728 F.2d 1453 (1984). The evidence, however, shows clearly that the merchandise was sold through the channels of trade for mechanical tubing, and was purchased in a manner common to that of the steel mechanical tubing industry.

The final *Carborundum* factor, applicable to this case, is that of the economic practicality of using the merchandise for purposes other than as axles. Plaintiff maintains that any other use of the imported merchandise would not be commercially practical because of its unique design. Mr. Taylor testified that the imported items, to his knowledge, have no other use in the United States, other than as axles. He further stated that using the items for fence posts, pipes, or in a conveyor business would be commercially impractical because of the cost and the further processing required.

Plaintiff's witness, Mr. Spoliansky, testified that it would be feasible, but commercially impractical to use these items for other uses such as roll bars on vehicles, or bearings, because a longer length of tube would be required.

Defendant's expert witness, Mr. Lazzari, testified that although he has not seen material with identical outside diameter and wall thickness actually used, he has seen material with similar characteristics used in conveyor rolls, agricultural equipment, rotating shifts, conduit pipes, and other uses. As to the commercial practicality of using the merchandise for an application appropriate for ASTM A513 tubing, Mr. Lazzari testified that "in the general scheme of things I would know that tubing for such an application can demand a very high selling price." Although plaintiff challenged Mr. Lazzari's knowledge of detailed manufacturing costs, plaintiff did not establish that the imported merchandise was incapable of practical uses for applications other than as axles.

As previously noted, it is the chief use of the class or kind of merchandise, not the particular imported merchandise, which must be proven by plaintiff. *See, e.g., Pistorino & Co.* v. *United States,* 67 CCPA 1, 4, C.A.D. 1234, 607 F.2d 989, 992 (1979). Plaintiff's case, however, consisted mainly of evidence of the use of the particular imported merchandise. Hence, plaintiff did not establish that the chief use of the class or kind of merchandise was as parts of not self-propelled vehicles.

Plaintiff further contends that although the merchandise is described generically as tubing, it also can be categorized as parts of not self-propelled vehicles. Pursuant to General Interpretive Rule 10(ij), articles which are described by an *eo nomine* or specific provision such as "tubes" are to be classified thereunder, even though they are also parts of another article. *See, e.g., United States* v. *Oxford Int'l Corp.,* 62 CCPA 102, 104, C.A.D. 1154, 517 F.2d 1374, 1376 (1975). Furthermore, an *eo nomine* designation includes all forms of the article. *See Nootka Packing Co.* v. *United States,* 22 CCPA 464, 470, T.D. 47464 (1935).

Plaintiff, however, submits that, pursuant to headnote 1(iv) of Schedule 6, Part 2, the merchandise is precluded from classification as "tubing," under item 610.32, TSUS, and is classifiable under item A692.60. Headnote 1(iv) of Schedule 6, Part 2, which is applicable to item 610.32, TSUS, provides that Part 2 does not include "other articles specially provided for elsewhere in the tariff schedules, or parts of articles."

In support of this contention the plaintiff cites *E.R. Hawthorne & Co.* v. *United States,* 730 F.2d 1490 (Fed. Cir. 1984). In *E.R. Hawthorne,* the court held that, by virtue of headnote 1(iv), Schedule 6, Part 2, "tapered or conical steel poles 20 to 39 feet long and chiefly used after finishing to support street or highway or other outdoor lights," and which would not be accepted by anyone else, were properly classifiable as parts of illuminating articles even if they were tubes or pipes. *E.R. Hawthorne,* 730 F.2d at 1491. The court noted that generally an *eo nomine* classification takes precedence over a classification as a part, except pursuant to headnote 1(iv), Schedule 6, Part 2, and held that since the imports in that case were chiefly used as parts of illuminating articles, they had to be classified as parts even if they were tubes. *Id.* at 1492.

The *E.R. Hawthorne* case is distinguishable because the class or kind of merchandise in this case has not been found to be chiefly used as parts of not self-propelled vehicles. Consequently, headnote 1(iv) of Schedule 6, Part 2 does not remove the imported merchandise from the *eo nomine* classification under item 610.32, TSUS, as "tubes." In the case at bar the court concludes that the degree of processing of the imported merchandise has not changed the nature and physical characteristics of the mechanical tubing to render it unsuitable for uses other than as axles for not self-propelled vehicles. *See, e.g., Avins Indus. Prods. Co.* v. *United States,* 62 CCPA 83, 86, C.A.D. 1150, 515 F.2d 782, 784 (1975).

The defendant in this case did not merely rely upon the statutory presumption of correctness. It has submitted competent, credible, and persuasive affirmative evidence to support the presumption that the merchandise has been properly classified as "tubes" under item 610.32, TSUS.

Mr. Lazzari, who testified for the defendant, established, to the satisfaction of the court, that the imported steel articles fall within the general definition of mechanical tubing, and are characterized within the steel tubing industry as mechanical tubing. Mr. Lazzari's testimony also showed that the merchandise fell within the general specification for tubing referred to as ASTM A513, which is used for a wide variety of purposes. Finally, Mr. Lazzari's testimony established that the imported merchandise could be commercially and practically used for a variety of applications.

The defendant also maintains that even if the court should find that the imported merchandise was not "tubes," it still should not be classified as parts of "not self-propelled vehicles," because "a major use of the tubing was for axles on mobile homes, which are not classifiable as not self-propelled vehicles." Since the court has concluded that the imported merchandise was properly classified as "tubes," under item 610.32, TSUS, it is not necessary to consider or determine other arguments or contentions.

In view of the foregoing, it is the determination of the court that the merchandise has been properly classified, and that plaintiff has failed to rebut the presumption of correctness that attaches to the classification of the merchandise by the Customs Service. Accordingly, since the imported merchandise was properly classified as "tubes" under item 610.32, TSUS, plaintiff's action is dismissed.